Mary J. Lamb, Appellee, v. Dennis J. Lamb, Defendant. Appeal of George K. Schmidt and Louis E. Gosselin, Respondents in Contempt Proceeding.

Gen. No. 33,851.

Opinion filed February 24, 1930. Rehearing denied March 10, 1930.

SAMUEL A. ETTELSON, Corporation Counsel and FRANCIS J. VURPILLAT, Assistant Corporation Counsel, for appellants.

MAURICE L. DAVIS, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal George K. Schmidt as comptroller of the City of Chicago, and Louis E. Gosselin as deputy comptroller of the City of Chicago, seek to reverse an order of the circuit court of Cook county adjudging them in contempt of court and imposing a fine against each of $25.

Mary J. Lamb filed her bill in the nature of a creditor's bill against Dennis J. Lamb, the substance of which was that she had obtained a judgment of more than $6,000 against Dennis J. Lamb and had exhausted all means under the law in an unsuccessful attempt to collect it; that Dennis J. Lamb was a civil service employee of the City of Chicago in the department of gas and electricity, at a salary of $225 a month; and

prayed that a receiver be appointed to collect Dennis J. Lamb's salary and to apply the proceeds towards satisfaction of the judgment. Dennis J. Lamb alone was made a party defendant. He filed his demurrer, which was overruled and the bill was then taken as confessed against him. . A receiver was appointed to collect and receive his salary as it came due. Afterwards a demand was made by the receiver on the comptroller and his deputy for the salary earned after the appointment of the receiver. The demand was refused and a petition was thereafter filed by the receiver asking that a rule be entered that the comptroller and his deputy show cause why they should not be punished for contempt of court. The rule was entered and the comptroller and his deputy filed a joint and several answer. Afterwards the court found defendants guilty of contempt and imposed a fine against each as stated.

The comptroller and his deputy contend that the court was without authority to enter the order finding them guilty of a contempt of court; that the City of Chicago is a municipal corporation existing for the public welfare and cannot be compelled, under the law, to pay the salary of one of its employees to a receiver appointed in a suit which is in the nature of a creditor's bill. *City of Chicago v. Hasley,* 25 Ill. 595; *Merwin v. City of Chicago,* 45 Ill. 133; *Addyston Pipe & Steel Co. v. City of Chicago,* 170 Ill. 580; and *City of Chicago v. People,* 98 Ill. App. 517, are cited in support of this contention.

In the *Addyston Pipe Company* case it was held that a creditor's bill would not lie against the City of Chicago to enable the complainant to reach a debt owing by the city to a third party. In that case a creditor's bill was filed against the city and Michael Joyce, in which it was alleged that complainant had obtained a judgment against Joyce, the issuing of an execution and a return of it *nulla bona* and averring that the city held money belonging to Joyce. There was a prayer

for discovery as provided in section 49 of the Chancery Act, Cahill's St. ch. 22, ¶ 49. It appeared that Joyce had performed labor for the city under a contract, for which money was due and owing to him from the city. The court held that the demurrer to the bill was properly sustained on the ground that a creditor's bill would not lie against a municipal corporation. The court quoted with approval from the *Hasley* case above cited (p. 582) as follows:

"There can be no doubt that the property of a private corporation may be seized and sold under a *fi. fa.* for the payment of its debts, as in the case of an individual. . . . The nature, objects and liabilities of political, municipal or public corporations, we think, stand on different grounds. These corporations signify a community, and are clothed with very extensive civil authority and political power. . . ."

Continuing, the court, referring to the *Hasley* case, said:

"The court then goes on to show that if the property of the city could be levied on and sold it would be impossible for it to perform the functions for the people for which it was created."

The court then considers the *Merwin* case (45 Ill. 133), in which it was held that a municipal corporation was not subject to garnishment, and on this question said (p. 583):

"It (the question) must be decided as a question of public policy. These municipal corporations are in the exercise of governmental powers, to a very large extent. They control pecuniary interests of great magnitude and vast numbers of human beings, who are more dependent upon the municipal, for the security of life and property than they are on either the State or the federal government. To permit the great public duties of this corporation to be imperfectly performed in order that individuals may the better collect their private debts would be to pervert the great objects of

its creation. That its efficiency for purposes of government would be impaired by holding it liable to garnishment cannot be doubted. A large and growing city like Chicago must constantly have hundreds of persons in its employment, and if the city cannot, at short intervals, make a settlement of these multitudinous accounts, but is liable to be drawn into court at the suit of every creditor of its numerous employees, it will not only be engaged in much expensive and vexatious litigation in which it has no interest, but, if unable to safely pay its employees and contractors, it may lose the services of persons that may be of much value.''

After quoting the above from the *Merwin* case, the court says that the decision holding that garnishment would not lie against a municipal corporation was predicated upon the ground of public policy, and continuing the court said (p. 584) :

''If, as we have held, a municipal corporation is not liable to the process of garnishment, upon what ground can a creditor's bill be maintained against a municipal corporation?''

The court then refers to section 1 of the Garnishment Act, Cahill's St. ch. 62, ¶ 1, and section 49 of the Chancery Act, Cahill's St. ch. 22, ¶ 49, and holds that a creditor's bill will not lie against a municipal corporation.

Counsel for the complainant, Mary J. Lamb, seeks to distinguish this case from the one at bar, as we understand the argument, on the ground that in the instant case, the City of Chicago was not a party to the creditor's bill, but we think the distinction does not alter the legal principle involved; nor do we think it would serve any useful purpose to discuss the cases of *Wren v. Dooley,* 97 Ill. App. 88; *Singer & Talcott Stone Co. v. Wheeler,* 6 Ill. App. 225, relied upon by complainant, because we are of the opinion that we are bound by the holding of the Supreme Court in the *Addyston Pipe Co.* case. If a receiver might be ap-

pointed for each employee of the City of Chicago where an unsatisfied judgment was obtained against him, the city might be drawn into numerous cases in which it had no interest; and under the rule announced in the *Addyston Pipe Co.* case, this would be against public policy.

The order of the circuit court of Cook county adjudging the comptroller and his deputy to be in contempt of court is reversed.

*Order reversed.*

McSurely, P. J., and Matchett, J., concur.