620

IRVING M. GREENBERG, Appellant, *vs.* WAUKEGAN-CALD-WELL BUILDING CORPORATION *et al.,* Appellee.

*Opinion filed March 22, 1963.—Rehearing denied May 29, 1963.*

HOFFMAN & DAVIS, of Chicago, for appellant.

CURTIS, FRIEDMAN & MARKS, of Chicago, (LOUIS DAVID FRIEDMAN, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Plaintiff, Irving M. Greenberg, instituted a suit for specific performance of a written contract to sell real property against the vendor, defendant Waukegan-Caldwell Building Corporation. Upon motion of defendant the circuit court dismissed the complaint for want of equity. Plaintiff has appealed directly to this court on the ground that a freehold is involved. *Schiro* v. *Gould & Co.* 18 Ill.2d 538.

It appears from the pleadings that plaintiff and defendant entered into a contract for the sale of certain real estate for a price of $1,850,000 on December 13, 1961. The principal provisions of the contract were contained

in a so-called "rider" attached to and incorporated in the contract. The rider provided in part as follows:

"3. It is understood and agreed that the improvements on the subject property will be used for the operation of a general hospital by the buyer. Seller warrants and represents that the cost of remodeling the existing structure to make it suitable for the operation of a general hospital, in accordance with the plans and specifications attached hereto, made a part hereof and by express reference incorporated herein, will not exceed the sum of $100,000.00, and seller agrees and undertakes at the election of buyer to do the aforesaid remodeling at actual cost plus ten (10%) per cent, but in no event at a cost to buyer in excess of $100,000. If buyer shall revise said plans and specifications, then at the option of buyer, seller will do the remodeling in accordance with the said revised plans and specifications at actual cost plus ten (10%) percent, not limited, however, to $100,000.00. The contract for such remodeling shall be with Trans-American Construction Co. at 5232 North Sheridan Road, Chicago, Illinois, and the cost of such remodeling shall be in addition to the purchase price.

\* \* \*

"5. It is further agreed and understood that this sale is conditioned upon Buyer obtaining within seventy-five (75) days hereof the necessary variations or permits under the zoning laws, in order to permit the completion of a general hospital, and is further conditioned upon the issuance of the necessary use permits for the operation of the premises as a general hospital, except that seller is not required to warrant that buyer has the proper qualifications to operate a general hospital, and this sale shall not fail if the use permit aforesaid is withheld because of the lack of such qualification. All

costs and expenses in connection with procuring the zoning variations or use permits shall be borne by the seller, but buyer shall make the applications therefor. Buyer shall not obligate seller for any costs and expenses without the approval of Curtis, Friedman & Marks, attorneys for seller.

"6. The following chronology shall be pursued after the execution of this contract:

a) Seller shall secure the necessary amendments to the existing commitments for the first mortgage loan or secure other financing as provided in paragraph 2 hereof.

b) Buyer shall make application to the Village of Morton Grove for the necessary zoning variations and use permits for a general hospital.

c) Buyer shall submit the necessary plans and specifications to the Department of Public Health of the State of Illinois for its approval and for the issuance of a building permit.

d) Buyer shall secure a building permit from the Village of Morton Grove for remodeling the present improvements for use as a general hospital.

e) This contract shall in all respects be fully consummated.

f) Buyer at its option shall engage Trans-American Construction Co., to do the necessary remodeling as provided in paragraph 3 hereof."

Thereafter the parties agreed to extend the contract to May 1, 1962. They provided for the deposit of the earnest money on May 1 in the event a valid zoning ordinance had then been passed. The agreement further provided that all periods of time referred to in the original contract be measured from May 1, 1962. The earnest money was eventually deposited in a joint order escrow on May 18, 1962.

On July 18, 1962, the defendant notified plaintiff that

the contract was terminated for failure to close by July 15, 1962.

On October 1, 1962, plaintiff filed his complaint which alleges that the representation that the cost of remodeling would not exceed $100,000 is false and that the actual cost would be $300,000. Plaintiff further alleges that its application for a special zoning use was allowed; that plaintiff has submitted data to the Department of Public Health for the purpose of obtaining use permits for the operation of a general hospital on the premises, but that approval has not been given for such use and the necessary use permits have not issued. The complaint then alleges that plaintiff is ready, willing and able to perform "if said defendant will do whatever is required to comply with the warranty and representation made by said defendant," that the remodeling cost according to plans and specifications would not exceed $100,000.

Defendant vendor filed a motion to dismiss the complaint on the ground that it is substantially insufficient in certain particulars, specifically pointing out that plaintiff has imposed conditions on his willingness to perform, and has not performed his obligations under the contract within the required time. In addition, the motion sets forth by affidavit that plaintiff has been denied a use permit to operate a general hospital. This claim was contested by counteraffidavit, stating that the Hospital Licensing Board has not yet made a final determination of plaintiff's application despite the adverse recommendation of the Chief of the Division of Hospitals.

The trial court then entered a decree sustaining the defendant's motion and dismissing the complaint for want of equity. It does not appear that plaintiff sought leave to amend his complaint.

On this appeal plaintiff does not attempt to defend the adequacy of his complaint, but insists that the defendant's motion was one under section 48 of the Civil Practice Act, .

and that the objection that a complaint is substantially insufficient in law is not available under section 48. Defendant, however, insists that its motion was properly sustained under section 45 of the Civil Practice Act. Plaintiff also claims that he was misled by the defendant's affidavit into believing that the motion was filed under section 48 and was therefore "entrapped" into failing to ask leave to amend.

We think it clear from the nature of the motion that it seeks relief under section 45 of the Civil Practice Act which specifically provides for motions to dismiss a pleading, "because it is substantially insufficient in law." The motion commences in the language of the statute and points out particular defects appearing on the face of the complaint.

But even if the motion is regarded as filed under section 48, the situation is no different. It appears from the face of the complaint that the plaintiff had not obtained the permits which were made a condition to the consummation of the contract. The affidavit filed by the plaintiff in response to the defendant's motion did nothing to correct this deficiency, but, instead, confirmed the fact that the permits had not been obtained. Since the 75-day period set forth in the contract for obtaining these permits had expired when the complaint was filed, it would have been of no avail to the plaintiff to obtain leave to amend.

The decree of the trial court was, therefore, appropriate, especially when plaintiff did not request leave to amend.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*