(No. 46398.—

CHARLENE HENDERSON, Appellant, v. GERALD FOSTER.—(Urbana Park District, Appellee.)

*Opinion filed November 27, 1974.*

344

Ora J. Baer II, of Baer & Mann, of Champaign, for appellant.

Darius E. Phebus, of Phillips, Phebus, Tummelson & Bryan, of Urbana, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This action was initiated pursuant to "An Act relating to wage deductions for the benefit of creditors and regulating the issuance of deduction orders," approved June 19, 1961 (Ill. Rev. Stat. 1971, ch. 62, par. 71 *et seq.*), herein called the Wage Deduction Act. Originally, the plaintiff, Charlene Henderson, had secured a judgment against the defendant Foster, her former husband, for arrearages in child-support payments awarded to her under a prior decree of the court. A wage-deduction summons was then issued to the Urbana Park District, defendant's employer. (Ill. Rev. Stat. 1971, ch. 62, pars. 74, 75.) The Park District filed a motion to quash the wage-deduction

summons on the grounds that it was immune from wage-deduction orders, alleging it was a municipal governmental corporation organized and operating under the Park District Code (Ill. Rev. Stat. 1971, ch. 105). The trial court quashed the summons and denied a motion for rehearing. The plaintiff then filed a notice of appeal from the order denying the rehearing and implicitly also appealed from the order quashing the wage-deduction summons. The appellate court held that the denial of the motion for a rehearing was not a final and appealable order and dismissed the appeal. (*Henderson v. Foster* (1973), 15 Ill. App. 3d 133.) In denying rehearing, the appellate court, in a supplemental opinion, considered the order quashing the summons and dismissed the appeal, stating that it was not a final and appealable order, relying on section 20 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 20(3)). In dicta, the appellate court stated that the motion to quash should have been denied and the defendant required to respond to the complaint by motion to dismiss or other appropriate pleading. We granted leave to appeal.

The plaintiff raises two issues on appeal: (1) whether the trial court's order to quash was final and appealable and, (2) whether a governmental entity, a municipal corporation, in the instant case, is immune from the operation of the Wage Deduction Act. For the reasons which we will discuss herein, we hold that the order in this case was final and appealable, and that the Park District is not immune from the operation of the Wage Deduction Act.

The first issue raises a procedural problem. Section 10(b) of the Wage Deduction Act provides that the provisions of the Civil Practice Act, as amended, shall apply to proceedings under the Act except as otherwise expressly provided. (Ill. Rev. Stat. 1971, ch. 62, par. 80(b).) The appellate court in its judgment relied on section 20 of the Civil Practice Act (Ill. Rev. Stat. 1971,

ch. 110, par. 20). The appellate court's reliance was misplaced. The Civil Practice Act requires that it should be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties. Ill. Rev. Stat. 1971, ch. 110, pars. 4, 33.

Although this motion was styled a motion to quash the wage-deduction summons, and treated as a section 20 motion by the appellate court, it was in the nature of a section 48 motion to dismiss and will be treated as such. (*Cf. Greenberg v. Waukegan-Caldwell Building Corp.* (1963), 27 Ill.2d 620, 624.) Section 48 provides for a motion for involuntary dismissal based upon certain specific defects or defenses and provides for filing a motion to dismiss where "the claim or demand asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand." (Ill. Rev. Stat. 1971, ch. 110, par. 48(1)(i).) Treating the motion in this case as one seeking an involuntary dismissal does not put either party at a disadvantage since both sides have argued the merits of the motion in this court.

Section 16 of the Wage Deduction Act provides that "Appeals may be taken from a final judgment or order of the court in like manner as in other civil cases." (Ill. Rev. Stat. 1971, ch. 62, par. 86.) Treated as a ruling on a section 48 motion, the trial court's order operated as an adjudication upon the merits since it was not a dismissal for any lack of jurisdiction but an involuntary dismissal under section 48(1)(i). (Ill. Rev. Stat. 1971, ch. 110A, par. 273.) The order was therefore a final and appealable order. It was final in the sense that it disposed of the rights of the parties upon the entire controversy. (*Brauer Machine and Supply Co. v. Parkhill Truck Co.* (1943), 383 Ill. 569, 574-75; *Village of Niles v. Szczesny* (1958), 13 Ill.2d 45, 48; *Treece v. Shawnee Community Unit School District No. 84* (1968), 39 Ill.2d 136, 139.) Any other disposition

of the trial court's order would have put the plaintiff on a never-ending treadmill of obtaining additional summons and then facing a series of motions to quash with no hope for an adjudication on the merits.

The second issue is whether the Urbana Park District is immune from the operation of the Wage Deduction Act. The Wage Deduction Act provides, *inter alia,* that upon the filing by a judgment creditor of an affidavit that the affiant believes any person is indebted to the judgment debtor for wages due, the clerk of the court in which the judgment was entered shall issue summons against the person named as employer. (Ill. Rev. Stat. 1971, ch. 62, par. 74.) "Person" is not defined in the Wage Deduction Act itself. However, in "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1971, ch. 131, par. 1.05) it is stated that the word "person" is to be applied "to bodies politic and corporate as well as individuals." We are dealing with a statutory remedy and, unless expressly excluded, it would seem that park districts come within the terms of the statute as bodies politic. With reference to the Wage Deduction Act, we have said that "garnishment process is purely a creature of statute [citation] and the setting of its dimensions is a matter for the legislature." (*Taylor v. Taylor* (1969), 44 Ill.2d 139, 144.) The legislature has specifically exempted particular retirement and pension funds of public employees from garnishment and similar proceedings. (*E.g.,* Ill. Rev. Stat. 1971, ch. 108½, pars. 4—135, 18—161.) The General Assembly did not exempt local governmental units or park districts in particular from the operation of the Wage Deduction Act.

The Urbana Park District argues it is not subject to garnishment process because of public policy. "The public policy of a State is to be found in its statutes, and, when they have not directly spoken, then in the decisions of the courts, and in the constant practice of governmental officials. When the legislature speaks upon a subject, upon

which it has the constitutional power to legislate, public policy is what the statute, passed by it, indicates." *Harding v. American Glucose Co.* (1899), 182 Ill. 551, 616; *Perry v. United States School Furniture Co.* (1907), 232 Ill. 101, 109-110; see also *Heckendorn v. First National Bank of Ottawa* (1960), 19 Ill.2d 190, *cert. denied,* 364 U.S. 882, 5 L. Ed. 2d 104.

Neither our constitution nor our statutes have granted municipal corporations immunity from garnishment. Rather this immunity has in the past been a doctrine created by this court. In *Merwin v. City of Chicago* (1867), 45 Ill. 133, this court first held that municipal corporations were not subject to garnishment because of public policy. It was felt that a municipal corporation could not be properly turned into an instrument or agency for the collection of private debts because the efficiency of government would thus be impaired and inconvenienced. The *Merwin* court relied on its earlier decision in *City of Chicago v. Hasley* (1861), 25 Ill. 485, where it was held that execution could not be legally issued against a municipal corporation on a judgment recovered against it. The court stated that the power to seize the property of a municipal corporation, if conceded, would involve the right to seize its revenues, which could involve the right to destroy the corporation.

The *Merwin* rationale and holding was followed by this court in subsequent situations. In *Triebel v. Colburn* (1872), 64 Ill. 376, it was held that the treasurer of a municipal corporation was not liable to the process of garnishment or as garnishee in respect to money due a policeman as salary. The court there reaffirmed its holding in *Merwin,* and found that the treasurer as a mere agent of the municipal corporation could not be liable to process. In *Addyston Pipe and Steel Co. v. City of Chicago* (1897), 170 Ill. 580, this court held that a creditor's bill would not lie against a municipal corporation to enable the complainant to reach a debt owed by the municipality to a third party. The *Merwin* and *Hasley* decisions were again

reaffirmed. Thus it can be seen that the major reason assigned in the past for the immunity from garnishment was that public policy demands that the prosecution of public business should not be interrupted or inconvenienced. (See 38 C.J.S. *Garnishment* sec. 39(b) (1943).) We note, also, that a statute passed by the Illinois General Assembly in 1905 to allow the garnishment of wages of public employees was declared unconstitutional by this court because of various defects in its drafting and not because garnishment of such employees' wages was constitutionally prohibited. *Badenoch v. City of Chicago* (1906), 222 Ill. 71.

The appellant argues in her brief that whether the doctrine is called public policy or sovereign immunity, the foundations of the decisions are identical. She further contends that recent court decisions enlarging governmental liability, and the abolition of sovereign immunity by the Illinois Constitution of 1970, have changed the public policy of Illinois. (Ill. Const. (1970), art. XIII, sec. 4.) Section 26 of article IV of the 1870 Constitution provided: "The state of Illinois shall never be made defendant in any court of law or equity." However, section 4 of article XIII of the 1970 Constitution in abolishing sovereign immunity does not limit the abolition to the sovereign immunity of the State of Illinois but provides: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." Thus, the principle of sovereign immunity, whether it stems from prior constitutional provisions or from principles of common law (see *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill.2d 11), does not exist under the 1970 Constitution except as the General Assembly provides by law. See S.H.A., Ill. Const., art. XIII, sec. 4, Constitutional Commentary, at 292 (1971).

It should be noted that the rationale which has heretofore been advanced in support of sovereign immunity of local governmental units is similar to that advanced

in support of municipal immunity from garnishment. Compare *Molitor,* 18 Ill.2d 11, 20-24, with *Merwin,* 45 Ill. 133, 135-136.

The force of the doctrine of public policy is weakened where the proposed garnishee is liable to be sued generally. (See 38 C.J.S. *Garnishment* sec. 39(b) (1943).) We have upheld the contractual liability of local governmental entities. (*Wall v. Chicago Park District* (1941), 378 Ill. 81.) In *Molitor,* tort immunity of local governmental entities had similarly been abolished. Absent some overriding countervailing policy, it is incongruous to allow a direct suit for the recovery of large sums of money from the governmental body and to deny suit in a situation where the public funds are not put in jeopardy. We note that the employer under the Wage Deduction Act will not lose any of its money but will be required to deliver over only that which it owes its employee. In fact the statute authorizes a fee to be taken by the employer for his administrative costs. Ill. Rev. Stat. 1971, ch. 62, par. 83(d).

We agree with appellant's final contention that there is simply no rational basis for distinguishing between a governmental employer and a private employer with respect to the operation of the Wage Deduction Act. The immunity from such actions is of judicial origin and can therefore be abolished by this court. We find little logic in allowing suits against governmental bodies in tort or contract, and yet still denying actions in garnishment or under the Wage Deduction Act. We find that the doctrine of wage-garnishment immunity is unsound and unjust under present conditions and consider that we must abolish that immunity. In reaching this re-evaluation we are mindful of and adopt the rationale of an older case from another jurisdiction that stated after reviewing this court's *Merwin* decision:

> "*** we cannot agree that there is any reason why the great public duties of a county need be imperfectly performed, or that its busi-

ness is in any danger of derangement, if it be compelled, by process of a court, to pay the salary of a servant to that servant's creditors. The county has no suit to defend, no counsel to employ, no witnesses to collect and pay. It has no burden cast upon it, and no duty to perform, except to act as temporary stakeholder, to await the determination of a court, in an action in which the county has no interest.

The argument of public policy as to inconvenience to the county and its officers does not reach our mind with sufficient force to impair another view of law and of right that is recognized throughout the civilized world; that is, that debtors should pay their debts." *Waterbury v. Board of Commissioners* (1891), 10 Mont. 515, 523, 26 P. 1002, 1004-1005.

Therefore, we now hold that the Urbana Park District, as a municipal corporation, is not immune from the operation of the Wage Deduction Act, and all prior decisions to the contrary are hereby overruled.

The order of the trial court sustaining the motion to quash and the judgment of the appellate court are reversed, and the cause is remanded to the circuit court of Champaign County, with instructions to set aside the order to quash and to proceed in conformity with the foregoing views.

*Reversed and remanded,*
*with directions.*