FIRST NATIONAL BANK IN ST. LOUIS, Plaintiff-Appellant, *v.* BARRETT L. COLEMAN, Defendant-Appellee.—(THE DEPARTMENT OF PUBLIC AID, Garnishee-Appellee.)

Fifth District No. 78-367

Opinion filed January 31, 1979.

Apoian, Ross & Funk, P. C., of East St. Louis (H. Gary Apoian, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

In October 1977, plaintiff First National Bank in St. Louis secured a judgment against defendant Dr. Coleman in the amount of $39,442.77. Subsequently, plaintiff filed a nonwage garnishment summons on the State of Illinois, Department of Public Aid, seeking to garnishee certain funds due Dr. Coleman for medical services he had provided to public aid recipients and other indigents pursuant to article V of the Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 5—1 *et seq.*). The Department and defendant Coleman moved to quash the summons, alleging that these funds were exempt from garnishment. After a hearing, the Circuit Court

of St. Clair County granted the motion and ordered the funds to be held by the garnishee pending an appeal. It is from this order that plaintiff seeks review.

The only issue in this case is whether monies payable by the Department to reimburse a physician for dispensing these medical services are exempt from garnishment by a judgment creditor of the physician under section 11—3 of the Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 11—3). This section provides:

> "All financial aid given under Articles III, IV, V, VI and VII shall be absolutely inalienable by assignment, sale, attachment, garnishment or otherwise."

The Department and Dr. Coleman argue that the plain, unambiguous language of this section exempts such funds as are payable to Dr. Coleman from any garnishment proceeding. Specifically, they allege that these funds constitute "financial aid," and cite sections 2—6 and 2—5 of the Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, pars. 2—6 and 2—5) as support for their position. Section 2—6 defines "financial aid" as "a money or vendor payment to or in behalf of a recipient for basic maintenance support or medical assistance provided under Articles III, IV, V, VI and VII." A "vendor payment," as defined by section 2—5, is "a payment made directly to the person, firm, corporation, association, agency, institution or other legal entity supplying goods or services to a recipient."

Plaintiff, however, argues that these vendor payments are subject to garnishment by a judgment creditor of the vendor. It is plaintiff's position that the clear intent of the legislature in enacting section 11—3 was to help public aid recipients to meet their financial needs and not to assist a vendor to avoid his financial obligations.

We note that with the abolition of sovereign immunity by the Illinois Constitution of 1970, except in such situations as the legislature may provide by law (Ill. Const. 1970, art. XIII, par. 4), the question becomes not whether the General Assembly has waived immunity, but whether it has granted such immunity by statute. (*First Finance Co. v. Pellum*, 62 Ill. 2d 86, 338 N.E.2d 876 (1975).) Accordingly, the resolution of this controversy depends on whether section 11—3 of the Public Aid Code provides sovereign immunity to the State in a garnishment proceeding brought by a judgment creditor of a vendor, who is entitled to certain payments from the State by virtue of the services he provided to public aid recipients.

In determining the meaning of this section, it is our primary function to ascertain and give effect to the intent of the legislature. (*In re Roberts Park Fire Protection District*, 61 Ill. 2d 429, 337 N.E.2d 8 (1975).) The intention of the legislature is to be determined not only from the language used in the statute but also from the reasons for its enactment and the

general purposes sought to be attained. *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 242 N.E.2d 267 (1968).

The language of sections 2—5, 2—6 and 11—3 is clear that vendor payments constitute financial aid, and therefore are "absolutely inalienable by \* \* \* garnishment." It is not clear, however, from a reading of these statutes, whether the General Assembly sought to protect vendors of medical services in addition to public aid recipients from their respective creditors, or whether it sought to protect the Department of Public Aid from all garnishment proceedings. To resolve this ambiguity, it is necessary to ascertain the general purposes behind this legislation.

Section 1—1 of the Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 1—1) sets forth the government's policy in providing financial aid services:

> "The purpose of this Code is to assist in the alleviation and prevention of poverty \* \* \*.
>
> To accomplish this purpose, this Code authorizes financial aid and social welfare services for persons in need thereof by reason of unemployment, illness, or other cause depriving them of the means of a livelihood compatible with health and well-being \* \* \*.
>
> \* \* \*
>
> All public aid policies shall be formulated and administered to achieve this end."

Section 5—1 of this chapter (Ill. Rev. Stat. 1975, ch. 23, par. 5—1) declares the purpose of the medical assistance program:

> "It is the purpose of this Article to provide a program of essential medical care and rehabilitative services for persons receiving basic maintenance grants under this Code and for other persons who are unable, because of inadequate resources, to meet their essential medical needs."

■■■ In light of these stated goals, it is clear that the class of individuals which the legislature sought to protect by this legislation are the public aid recipients and not the vendors of medical services. Although the language of sections 11—3, 2—5 and 2—6 is phrased in absolute terms that all vendor payments are exempt from garnishment, it must be reasonably construed so that absurd and unjust consequences will be avoided. (See *Rapacz v. Township High School District No. 207*, 2 Ill. App. 3d 1095, 278 N.E.2d 540 (1st Dist. 1971).) "The courts have observed that a general rule of statutory construction indicates that the spirit and dominating purpose of an enactment prevails over the letter thereof in ascertaining and giving effect to the intention of the legislature." (*In re Carson*, 10 Ill. App. 3d 384, 386, 295 N.E.2d 740, 742 (3d Dist. 1973).) In this case, the construction advanced by defendant and garnishee would unjustly permit a physician

to place substantial assets beyond the reach of his creditors, a result which we believe is not within the legislative intent.

Dr. Coleman and the State argue that an exemption of vendor payments from garnishment by a judgment creditor of such vendor would encourage vendors to furnish essential services to indigent persons. We do not believe that the legislature's refusal to extend this exemption to these vendors will have the effect of deterring physicians from participating in this program. The physician still has the incentive to provide medical services under this Code in that he is assured of direct payment from the State. The problems, therefore, of a physician having to collect the debts from a private individual are eliminated.

Even if there existed a measurable deterrence effect, there is no justification for a governmental entity providing an incentive to a physician to avoid his financial obligations. In any event, it would indeed be ironic to permit a physician to escape from his personal debts under this chapter when one of the stated goals of financial aid is to assist recipients of public aid to "realize their capacities for self-care, self support, and responsible citizenship" (Ill. Rev. Stat. 1975, ch. 23, par. 1—1).

Likewise, we do not believe the legislature intended to exempt the Department from all garnishment proceedings. A close look at this legislation reveals that the Department will not be seriously impaired by having to act as garnishee in this particular situation. The Department is still immune from all the garnishment proceedings in which a creditor of a public aid recipient seeks to garnishee the financial aid offered under this chapter. As many, if not most, of the potential garnishment actions involve these creditors, the Department will be subject to only a limited number of garnishment proceedings which involve a creditor of a vendor. In addition, there is no grave impairment of government operations in compelling the Department to act as garnishee in these few actions as it is neither a primary defendant nor subject to a money judgment. While these proceedings do nevertheless cause some inconvenience to the officials responsible for the paper work, we believe that it would be incongruous for the legislature to deny a judgment creditor of a vendor access to a garnishment proceeding in which public funds are not seriously jeopardized, when State and local governments are often sued directly for large sums of money. (See *Henderson v. Foster,* 59 Ill. 2d 343, 319 N.E.2d 789 (1974).) Lastly, any impairment of government operations should be balanced against other countervailing State interests. Of particular importance is the following statement:

> "The argument of public policy as to inconvenience to the county and its officers does not reach our mind with sufficient force

to impair another view of law and of right that is recognized throughout the civilized world; that is, that debtors should pay their debts." (*Henderson v. Foster*, 59 Ill. 2d 343, 351, 319 N.E.2d 789, 793 (1974) (quoting from *Waterbury v. Board of Commissioners*, 10 Mont. 515, 523, 26 P. 1002, 1004-05 (1891)).)

Although this statement refers to county officials, it equally applies to the situation here.

■■ Accordingly, we hold that funds payable by the Department to reimburse a physician for dispensing medical services to public aid recipients are subject to garnishment by a judgment creditor of the physician.

The order of the Circuit Court of St. Clair County sustaining the motion to quash is reversed, and the cause is remanded with instructions to set aside this order and reinstate the nonwage garnishment.

Reversed and remanded.

JONES and KUNCE, JJ., concur.