**Bertha BALARK, Plaintiff-Appellee and Cross-Appellant,**

v.

**Michael CURTIN, et al., Defendants-Appellants and Cross-Appellees.**

Nos. 80–1956, 80–2327.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1981.

Decided July 31, 1981.

Cheryl L. Smalling, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellants and cross-appellee.

Edward T. Stein, Singer & Stein, Russell C. Green, Block, Levy & Becker, Chicago, Ill., for plaintiff-appellee and cross-appellant.

Before FAIRCHILD, SPRECHER and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff Bertha Balark is a judgment creditor of the defendants, six City of Chicago policemen. Plaintiff had previously prevailed on her civil rights claim under 42 U.S.C. § 1983 pursuant to a stipulation reached at the close of trial.[1] The district court entered judgment in favor of Balark

---

1. Plaintiff's three children were also plaintiffs in the suit and parties to the stipulation. The three children did not, however, join in this garnishment proceeding.

based upon the terms of the stipulation. One year later, plaintiff returned to federal court to collect her judgment by garnishing the wages of the defendants. Fed.R.Civ.P. 69, 70. Defendants filed a motion to quash the garnishment proceeding which was denied by the district court. Plaintiff then sought attorneys' fees under 42 U.S.C. § 1988 for her successful garnishment action. The district court denied her motion for fees. These consolidated appeals followed.

## I. *Garnishment*

Defendants challenged the garnishment proceeding on two grounds. First, defendants alleged that the wording of the stipulation upon which the judgment order was based did not reflect the true understanding between the parties. Second, defendants asserted that the garnishment proceeding was barred by Illinois statute. We find both of these contentions to be without merit and, accordingly, affirm the judgment of the district court dismissing defendants' motion to quash the garnishment proceeding.

The alleged confusion concerning the stipulation focuses on clause 5 of the stipulation

> 5. That plaintiffs Bertha Balark, Dana Balark, Anne Balark, and Dane Balark have discussed this matter thoroughly with their attorneys, and are aware of the *method of payment of the judgment* against defendants,[*] and they are satisfied with the amount of Four Thousand Two Hundred Fifty and No/100 ($4,250.00) Dollars for each of the four plaintiffs, and the method of payment as total settlement of all claims arising out of this incident between plaintiffs herein and the defendants herein.

Defendants asserted that their typist failed to type the following phrase where the asterisk appears in clause 5:

"to wit through the City of Chicago." Defendants offered parol evidence in the form of affidavits from their counsel to establish that the stipulation inadvertently failed to reflect the agreement between the parties. Under the defendants' view, the plaintiff agreed to proceed exclusively against the City of Chicago under the police officer's indemnity statute, Ill.Rev.Stat. ch. 24, § 1–4–5 (1979), and to collect the judgment from the City's tort judgment fund. Defendants wish to reform the stipulation by adding the omitted phrase. Plaintiff has responded with an affidavit from one of her attorneys as well as by argument in a memorandum before the district court. Plaintiff denies that there was an agreement that the exclusive means of collecting the judgment would be through the City of Chicago.

Defendants' burden on the reformation question is a heavy one. Defendants must establish by clear and convincing evidence that the instrument does not express the intent of the parties.[2] *In re Vernon Hills, Inc.*, 348 F.2d 4, 9 (7th Cir. 1965). *See also Aetna Insurance Co. v. Paddock*, 301 F.2d 807 (5th Cir. 1962); *Timber Investors, Inc. v. United States*, 587 F.2d 472 (Ct.Cl.1978). On the face of the conflicting evidence in this case, however, the decision of the district court was not clearly erroneous. The affidavits filed by the defendants fail to establish that the parties agreed that the *exclusive* means of collection would be through the judgment fund even if the parties expected that the City would ultimately pay the judgment. The affidavit filed by one of the defendants' attorneys who was present at a portion of the settle-

---

**2.** Defendants' attempt to reform the stipulation presents an interesting question concerning the source of the standards to evaluate this claim. Some decisions have applied state law in these circumstances although without extended discussion. *See, e. g., Clarke v. Burkle*, 570 F.2d 824, 828 (8th Cir. 1978). Since the stipulation was the predicate for a federal court judgment, however, there are reasons that would favor a uniform federal common law approach. *Cf.,*

*Dice v. Akron, C. & Y. RR.*, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952) (validity of settlement release in FELA action is controlled by federal law). In any event, we feel it unnecessary to decide this matter because the standards would be the same in this case. *See, e. g., Cravens v. Hubble*, 375 Ill. 51, 30 N.E.2d 622 (1940); *Parrish v. City of Carbondale*, 61 Ill. App.3d 500, 18 Ill.Dec. 779, 378 N.E.2d 243 (1978).

ment discussions reveals that certain settlement offers were rejected because they were too low given the time lag before the City would pay off the judgment. But this affidavit fails to indicate that the ultimate settlement was conditioned upon any agreement to proceed exclusively against the City of Chicago. If the requested modification of the stipulation here were less onerous to plaintiff, it might be more feasible to reach a different result, but in this case a major economic impact would apparently result from at least a four-year deferral of collection (the current backlog of payment from the City's tort judgment fund), while interest accrues only at rates substantially below the current market.[3]

■ Defendants' statutory argument rests on the premise that the established right of a judgment creditor to garnish the wages of a public employee, *see Henderson v. Foster*, 59 Ill.2d 343, 319 N.E.2d 789 (1974), is limited where the City is an indemnitor of the claim and the garnishment would result in an immediate payment by the City in violation of the legal restrictions on the City's tort judgment fund.[4] Defendants argue that immediate indemnification is required by the indemnification statute but that immediate payment would contravene statutory restrictions on the judgment fund. The restriction in question requires that certain judgments against the City be paid from the judgment fund in the order in which the judgments were obtained.[5] Ill. Rev.Stat. ch. 24, § 8-1-16 (1979). Since there is a backlog of unpaid claims against the City, immediate payment would result in compensating plaintiff prior to antecedent judgment creditors.

The defendants' argument blurs important distinctions between their right to be indemnified by the City and their liability to the plaintiff. It is only the payment of the indemnification claim to the police officers that would involve any disbursement of the City's funds. When faced with a garnishment, a public "employer under the Wage Deduction Act will not lose any of its

3. The dissent points to some indications of what the parties *may* have *expected*, but nowhere points to uncontroverted evidence that they *agreed* to payment by the City as the *exclusive* means of collection. A finding that there was no such agreement is not clearly erroneous (and the dissent does not suggest to the contrary). The dissent's conclusions regarding the negotiations in the instant case are simply not borne out by the affidavit filed by the defendants' attorney. That affidavit merely relates certain fragments of what was undoubtedly a more extensive discussion and fails on its face to state that there was any explicit agreement regarding the now purportedly exclusive means of payment of plaintiff's judgment.

4. Defendants' argument rests on the premise that the district court may not enforce collection procedures against the state that contravene restrictions established by state law. Some support of this view can be found in Rule 69(a) of the Federal Rules of Civil Procedure:

> Process to enforce a judgment for the payment of money shall be by writ of execution, unless the court directs otherwise. The procedure on execution ... shall be in accordance with the *practice and procedure* of the state in which the district court is held ....

Fed.R.Civ.P. 69(a) (emphasis supplied). *See Gabovitch v. Lundy*, 584 F.2d 559 (1st Cir. 1978). There is at least some question whether the defense asserted here would constitute a

matter of "practice or procedure" within Rule 69. We are willing to assume the validity of defendants' position, however, for the purpose of this appeal.

When considering this question, the Fifth Circuit had no difficulty in ordering the state to pay an outstanding civil rights judgment despite contrary state law. *Gates v. Collier*, 616 F.2d 1268, 1271-72 (5th Cir. 1980), *modified in other respects*, 636 F.2d 942 (5th Cir. 1981). *Gates* relied on Rule 70 of the Federal Rules of Civil Procedure relating to the enforcement of judgments directing a party to perform a specific act despite the apparent distinction in the Rules between judgments for the payment of money (Rule 69) and judgments granting equitable relief (Rule 70). *Compare Gabovitch*, 584 F.2d at 560 n.1.

The opinion in *Gates* leaves the reader with the distinct impression that the court would have reached the same result under the general authority of the district court to enforce its judgments without regard to any specific statutory authorization. *Gates*, 616 F.2d at 1271.

5. In a separate action, Judge Grady has held portions of these restrictions on the City's judgment fund unconstitutional. *Evans v. City of Chicago*, Nos. 77-C-4119, 79-C-1939 (N.D.Ill. 1981), *appeals docketed*, Nos. 80-1150, 80-1344 (7th Cir.). Of course, we express no opinion on the merits of these appeals.

money but will be required to deliver over only that which it owes its employees." *Henderson v. Foster*, 59 Ill.2d 343, 350, 319 N.E.2d 789, 793 (1974).[6] Even if the City paid the indemnification claim immediately, the action that would possibly infringe upon the alleged judgment fund restrictions would be the indemnification action and not the garnishment proceeding. This result follows from the fact that only an indemnification action could possibly result in a judgment against the City within the meaning of the statute establishing the alleged restriction on the judgment fund. Ill.Rev. Stat. ch. 24, § 8–1–16 (1979).[7] The judgment in the instant case was entered against the individual policemen, which places it outside any alleged restriction on the operation of the judgment fund.

The defendants have also argued that, because indemnification is automatic, the two actions should be somehow merged so as to subject a judgment against an indemnified policeman to the alleged restrictions upon certain judgments against the City. Indemnification is not automatic, however, and the City can contest its liability where the "injury results from the wilful misconduct of the policeman." Ill.Rev.Stat. ch. 24, § 1–4–5 (1979).[8] *Karas v. Snell*, 11 Ill.2d

233, 142 N.E.2d 46 (1957); *Banks v. City of Chicago*, 11 Ill.App.3d 543, 297 N.E.2d 343, 348 (1973). The two actions are quite separate and the garnishment of an indemnified policeman's wages is not sufficient to force the City to expend any of its funds. Counsel for the defendants admitted as much at oral argument when she maintained that the City would feel free to oppose any indemnification claim even after a four year delay in the payment of the judgment because of the judgment fund backlog. This scenario presents the spectre (at least in theory) of forcing plaintiff to wait to collect her judgment because of an asserted drain on the City's funds only to have the City deny any liability, leaving plaintiff to proceed solely against the individual policemen. We reject any construction of the relevant statutes that would provide for such an absurd result.

## II. *Attorneys' Fees*

■ The district court refused to award attorneys' fees to the plaintiff because it found no support in this circuit for an award of fees for time spent litigating collection procedures for a judgment awarded in a civil rights action.[9] Subsequent to the decision of the district court, this court ruled in *Bond v. Stanton*, 630 F.2d 1231 (7th

---

**6.** The dissent suggests that Illinois may in the future "recreate some type of municipal immunity to garnishment" for claims subject to indemnity, but there is admittedly no such immunity under present law. Creation of such immunity would mean a major abridgement of the policy of *Henderson*, applicable to classes of employees extending far beyond policemen. Many state and local municipal employees in Illinois have some type of indemnification similar to that granted policemen. *See, e. g.*, Ill. Rev.Stat. ch. 127, § 1302 (1979) (indemnification for all state employees); Ill.Rev.Stat. ch. 122, § 10–20.20 (1979) (Chicago school personnel); Ill.Rev.Stat. ch. 34, § 301.1 (1979) (County sheriffs). Such a massive exception to *Henderson* should not be created by this court where *Henderson* and subsequent Illinois decisions such as *First Finance Co. v. Pellum*, 62 Ill.2d 86, 338 N.E.2d 876 (1975), stress that exemptions to the general statutory power to garnish wages owed by any "person" to the debtor must be found within the garnishment statute itself. *Henderson*, 59 Ill.2d at 347, 319 N.E.2d at 791; *Pellum*, 62 Ill.2d at 90, 338 N.E.2d at 878. If there is any conflict between garnishment of policemen's wages and the purposes of

the indemnification statute, the simple solution is to relieve the policemen of the garnishment burden by paying the indemnity obligation.

**7.** On its face, even the indemnification claim does not fit within the categories allegedly subject to the judgment fund restrictions because it is not a "tort judgment," a judgment against the City for "damage to . . . private property" or a judgment for the "taking of private property for public use." Ill.Rev.Stat. ch. 24, § 8–1–16 (1979).

**8.** Indeed, given the level of proof required in civil rights actions, "wilful misconduct" could often be shown in response to an indemnity claim based upon civil rights action liability.

**9.** The district court recognized that fees had been awarded for efforts to enforce a civil rights judgment in *Gary W. v. Louisiana*, 441 F.Supp. 1121, 1127–28 (E.D.La.1977), *aff'd*, 622 F.2d 804 (5th Cir. 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981), but declined to follow that decision.

Cir. 1980), that prevailing plaintiffs were ordinarily entitled to attorneys' fees "incurred in litigating and establishing their entitlement to fees." The court reasoned in *Bond* that any other approach would defeat the Congressional purpose in awarding fees by diluting an award of fees by the possible costs imposed on attorneys for extensive *uncompensated* litigation to secure their fees.

We find this case indistinguishable in principle from *Bond*. Plaintiff seeks fees for her efforts to collect the judgment awarded her in her successful action under the civil rights laws. Congress has determined that attorneys' fees are necessary to fulfill the purposes of the civil rights laws by transferring the costs of litigation to those who infringe upon basic civil rights. *Bond*, 630 F.2d at 1235. The compensatory goals of the civil rights laws would thus be undermined if fees were not also available when defendants oppose the *collection* of civil rights judgments. An award of compensation for injuries sustained as a result of unconstitutional state action would be "diluted" if fees were denied to plaintiffs required to contest substantial efforts to resist or obstruct the collection of civil rights judgments. The victory would be hollow if plaintiffs were left with a paper judgment not negotiable into cash except by undertaking burdensome and uncompensated litigation.

Accordingly, we affirm the order of the district court refusing to quash the garnishment of defendants' wages. Further, we reverse the order of the district court denying plaintiff's motion for attorneys' fees and remand for a determination of the appropriate fee award for services in the district court action as well as on this appeal.

Affirmed In Part, Reversed In Part And Remanded.

SPRECHER, Circuit Judge, dissenting.

I respectfully dissent. I would reverse the denial of the motion to quash the garnishment summons. I would base this result solely upon the stipulated agreement between the parties, but I would enforce that agreement on the basis of what appears to me to be Illinois public policy. Because the plaintiff would then not prevail in her attempt to collect upon her civil rights judgment, I would affirm the denial of attorneys' fees involved in the attempted collection.

Illinois practice and procedure govern this attempted garnishment in aid of execution of a money judgment. Rule 69(a) of the Federal Rules of Civil Procedure clearly provides that the "procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought . . . ." *Gabovitch v. Lundy*, 584 F.2d 559 (1st Cir. 1978); *Slaughter v. Winston*, 347 F.Supp. 1221 (E.D.Va.1972), *aff'd.*, 476 F.2d 972 (4th Cir. 1973).[1]

The Illinois statute provides that the City of Chicago "shall indemnify" a member of its police department for injury caused a third person while the member is performing his police duties, without the contributory negligence of the injured person and in the absence of wilful misconduct by the member. Ill.Rev.Stat. ch. 24, § 1–4–5. This statute or its predecessor has been in effect for over 35 years. Since 1945, "the statute existed primarily for the benefit of policemen against whom a judgment was rendered and not for the benefit of the person injured." *Andrews v. Porter*, 70 Ill.

---

1. The two Fifth Circuit cases upholding the authority of a federal district court to order the payment of money judgments despite the language of Rule 69(a) are distinguishable in that federal jurisdiction would have been completely frustrated in each case. In *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980), *rehearing granted*, 636 F.2d 942 (1981), Mississippi law prohibited the satisfaction of any judgment against the state except by legislative appropriation, and Mississippi officials indicated that sufficient funds would never be appropriated. In *Gary W. v. State of Louisiana*, 622 F.2d 804 (5th Cir. 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981), the same situation prevailed in Louisiana. In the present case, it is not contended that judgments against the City of Chicago are not paid, but only that payment is delayed.

App.2d 202, 217 N.E.2d 305, 309 (1966). When the Illinois Supreme Court affirmed the *Andrews* case in 37 Ill.2d 309, 226 N.E.2d 597, 598 (1967), the Court added:

The legislation is designed simply to benefit policemen against whom judgments may be rendered, preventing them from being restrained in performing their duty by fear that they might be called upon to pay substantial judgments.

Another purpose for the legislation was to relieve Chicago policemen from the burden of carrying expensive public liability insurance, which relief has the indirect effect of increasing their wages. *Gaca v. City of Chicago*, 411 Ill. 146, 103 N.E.2d 617, 622 (1952); *Karas v. Snell*, 11 Ill.2d 233, 142 N.E.2d 46, 52 (1957).

To permit the garnishment of police members' salaries would fly in the face of the purposes of the indemnity statute and would obviously run counter to Illinois public policy as defined by that statute. Apparently Illinois courts have not addressed this issue, possibly because from 1867 (*Merwin v. City of Chicago*, 45 Ill. 133) to 1974 (*Henderson v. Foster*, 59 Ill.2d 343, 319 N.E.2d 789) municipal corporations were not subject to garnishment because of judicially-created public policy. If given the opportunity to consider the problem, Illinois courts may well re-create some type of municipal immunity to garnishment in those cases where the Chicago police indemnity statute is involved.

But in this case, we need not reach that issue. Here the parties negotiated a settlement and compromise on the basis that the judgment creditor would look to the City of Chicago for payment and would therefore not harass the police members with garnishment summons. The agreement to rely upon the City for payment can be determined on the present record without the necessity for reforming any document:

(1) The stipulation was executed by plaintiffs' counsel and by an assistant corporation counsel for the City of Chicago.

(2) The stipulation provided that the plaintiffs "have discussed this matter of settlement thoroughly with their attorneys, and are aware of the method of payment of this judgment against the defendants, and they are satisfied . . . ." If the plaintiffs were to proceed to satisfy the judgment against the individual police members, this language would be meaningless surplusage.

(3) The stipulation provided that "in consideration for the herein mentioned settlement and payment thereof, plaintiffs . . . agree to indemnify and hold harmless the City of Chicago, its officers, agents, servants, employees and Officers [named defendants] . . . ." Why were the plaintiffs agreeing to indemnify and hold harmless the City of Chicago?

(4) The affidavit of assistant corporation counsel Fioretti alleges that plaintiffs' counsel rejected offers of $12,500 and $15,000 because it would take three or four years for the City of Chicago to pay the judgment or in the alternative the judgments could be sold at a discount of 15 to 20% for immediate cash. The stipulated settlement was $17,000. These facts were not contradicted by counter-affidavit.

(5) The settlement judgment was entered on April 11, 1979. On May 14, 1979, the plaintiffs filed another action in the Northern District of Illinois under No. 79 C 1939, against the City of Chicago and Clark Burrus, Comptroller of the City of Chicago, seeking *immediate* payment from the City. The plaintiffs' complaint in that case contained the following allegations among others:

3. The Defendant CITY OF CHICAGO, is a duly constituted Illinois municipal corporation and is responsible, through its Department of Finance, for the administration and payment of "tort judgments" rendered against the City of Chicago, its agents, servants and employees.

\*    \*    \*    \*    \*    \*

8. After the entry of a tort judgment, the practice and procedure of the Defendant City, through Defendant BURRUS, his agents, servants or employees, is to enter said tort "judgment" and amount on a "waiting list" for payment by the Defendants to the Plaintiffs.

9. By statute, custom and practice the Defendant City routinely pays tort judg-

ments (such as this one) entered against its agents, servants or employees (see CH. 24, § 1–4–5 and CH. 85, § 2–301 and 302, Ill.Rev.Stat.). In other words, the tort "Judgment" set forth herein and others like it are paid by the Defendant City of Chicago through Defendant Clark Burrus.

10. It is the practice, custom and policy of the Defendant City of Chicago and Defendant Clark Burrus to arbitrarily and capriciously, in violation of Plaintiffs' rights to substantive and procedural due process withhold payment of tort "judgments" for up to four years.

In other words, the plaintiffs knew exactly what the procedure was in collecting a tort claim against a Chicago police member, they negotiated a more advantageous settlement based on that knowledge, and then they sought to circumvent that procedure by filing No. 79 C 1939 and by garnishment procedures in contravention of Illinois public policy.

The delay in payment of tort judgments against the City of Chicago probably calls for a remedy, but not at the expense of the people the indemnity statute was designed to protect.