ARTHUR McLORN, JR., Plaintiff-Appellee, v. THE CITY OF EAST ST. LOUIS, Defendant-Appellant.—(FIRST ILLINOIS BANK, EAST ST. LOUIS, Garnishee-Intervenor.)

Fifth District    No. 80-567

Opinion filed March 30, 1982.

KARNS, P. J., dissenting.

Edward J. Kionka, of Carbondale, and Dale M. Funk, of Apoian, Ross & Funk, P. C., of Belleville, for appellant.

Del A. Goldenhersh, of Goldenhersh & Goldenhersh, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant-Appellant, the City of East St. Louis (the City), appeals from a final order and judgment of the circuit court of St. Clair County which denied the City's motion to quash a garnishment summons. The City raises one issue on this appeal, that is whether its Ordinance No. 80-10043, which prohibits nonwage garnishment of City funds on deposit at institutions within the City, is valid. The City urges resolution of this issue in its favor on the ground that, as a home rule unit, the City is entitled to prohibit the garnishment of City funds located within the City because that is a subject pertaining to the City's government and affairs under article VII, section (6) of the Illinois constitution. (Ill. Const. 1970, art. VII, §(6).) Appellee, Arthur McLorn, raises two arguments to rebut the City's contention. First, McLorn asserts that the ordinance in question is an invalid legislation of sovereign immunity. Second, McLorn contends that

the ordinance is an improper exercise of powers not accorded home rule units by the constitution. We affirm.

In 1979 a final order of the Industrial Commission awarded Arthur McLorn a workers' compensation award of $11,012.80 against the City. The City failed to pay the amount of the award, and on August 24, 1979, McLorn filed an application with the circuit court of St. Clair County for entry of judgment on the award. On September 20, 1980, judgment was entered. On May 22, 1980, the City adopted the following ordinance:

## "HOME RULE ORDINANCE TO GRANT IMMUNITY TO THE PROPERTY AND ASSETS OF LOCAL GOVERNMENTAL UNITS AND SCHOOL DISTRICTS FROM SUPPLEMENTARY PROCEEDINGS INSTITUTED BY JUDGMENT CREDITORS AND THEIR SUCCESSORS

WHEREAS, the City of East St. Louis is a 'Home Rule Municipality' under the provisions of Article VII, Section 6—a, etc., of the Illinois State Constitution and was adopted in 1970; and

WHEREAS, the legislature of the State of Illinois has not enacted any statutes dealing with or granting sovereign immunity as to supplementary proceedings relating to local units of government, including municipalities, school districts, park districts, etc., as was reserved to said legislature in Article XIII, Section 4 of the Illinois State Constitution; and

WHEREAS, it would be within the purview of the City of East St. Louis to enact legislation dealing with the issue of immunity of local governmental units and school districts from supplementary proceedings initiated by judgment creditors and their successors as such proceedings would occur and/or effect [*sic*] such local governmental units and school districts situated within the geographical boundaries and municipal corporate limits of the City of East St. Louis; and

WHEREAS, it would be in the best interest of the City and its citizens and the local governmental units, including school districts, park districts, sewer districts and health districts, to be granted immunity by such actions of judgment creditors as it relates to the property of such entities situated within the geographical boundaries of the City of East St. Louis.

NOW, THEREFORE, BE IT ORDAINED BY THE MAYOR AND THE ALDERMANIC COUNCIL OF THE CITY OF EAST ST. LOUIS, as follows:

I. All property or assets of local governmental units, including municipalities, school districts, park districts and sewer districts, shall be immune and shall not be subject to garnishment actions by judgment creditors where said property or asset is held or dis-

posited [*sic*] with any third party, or situated within the geographical boundaries and city limits of the City of East St. Louis.

II. Any institution, firm, trust, person or corporate entity situated within the city limits of the City of East St. Louis, upon which a judgment creditor issues a garnishee summons on any property or any local governmental unit, shall be empowered to affirmatively plead the immunity granted in the preceding paragraph 1.

III. Any local governmental unit, upon whose property has been subject to a garnishee summons with any third party institution referred to in Sections 1 and/or 2 of this Ordinance, shall have the right to intercede as a party of interest to any such garnishment proceedings and to affirmatively plead the immunity granted in Section 1 of this Ordinance.

IV. Garnishment process, as defined and intended within the provisions of this Ordinance, shall not include wage deduction summons upon local governmental units situated within the geographical limits of the City of East St. Louis."

The City is a home rule unit. On May 27, 1980, McLorn filed an affidavit for garnishment (nonwage) based on his belief that the First Illinois Bank, East St.Louis (the Bank), had City funds in its possession. The City was granted leave to intervene and filed a motion to quash the garnishment summons on the ground that "a certain Ordinance #80-10043, * * * grant[s] imnuity [*sic*] to the property and assets of the City from all actions or proceedings instituted by judgment creditors including the act of non-wage garnishment." On September 18, 1980, the circuit court denied the motion to quash and the City filed a motion asking the court to reconsider this decision. This motion was denied on November 3, 1980. The circuit court entered judgment in favor of McLorn and against the City and the Bank and also ordered the Bank to pay any City funds held by the Bank to McLorn pursuant to the garnishment. This last order was stayed pending appeal. The City then appealed to this court.

■■ The City initially contends that the ordinance in question does not conflict with article XIII of the Illinois Constitution. Article XIII, section 4 provides that "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, §4.) The City contends that the words "General Assembly" should be construed to "include other legislative bodies to whom the General Assembly and the constitution have granted concurrent legislative power." We cannot agree. The constitution does not say "Except as the General Assembly *and other legislative bodies* may provide * * *." (Emphasis added.) Hence, we read "General Assembly" to mean General Assembly. The supreme court implied some support for this reading when it said that "the principle of sovereign immunity, whether it stems from prior

constitutional provisions or from principles of common law (*see Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11), does not exist under the 1970 Constitution *except as the General Assembly provides by law. See* S.H.A. Ill. Const., art. XIII, sec. 4, Constitutional Commentary, at 292 (1971)." (Emphasis added.) (*Henderson v. Foster* (1974), 59 Ill. 2d 343, 349, 319 N.E.2d 789.) We conclude that only the General Assembly may establish sovereign immunity. The question before us now becomes whether the ordinance confers sovereign immunity on the City. The City appears to claim that the ordinance does not grant sovereign immunity to the City, but rather is solely a procedural matter, because it restricts only the manner in which a judgment against the City may be collected. This argument focuses on only one aspect of the ordinance. Formerly, the standard used to determine whether a municipal corporation was immune focused on whether public funds would be diverted to pay damage claims. " 'The reason, as often expressed, is one of public policy, to protect public funds and public property.' " (Emphasis deleted.) (*Thomas v. Broadlands Community Consolidated School District No. 201* (1952), 348 Ill. App. 567, 572, 109 N.E.2d 636.) That is, if the *effect* of an ordinance is to protect municipal funds from the reach of creditors, then the ordinance provides sovereign immunity for the city so ordaining. The current validity of this effects test is supported by a 1979 supreme court case involving the sovereign immunity of the State of Illinois. A suit is against the State if "the State will be directly and adversely affected by the judgment or decree * * *." (*Hudgens v. Dean* (1979), 75 Ill. 2d 353, 357, 388 N.E.2d 1242.) The court concluded that the suit in question was barred by sovereign immunity because it would require "the spending of state funds * * *." (*Hudgens v. Dean* (1979), 75 Ill. 2d 353, 357; see also *Land v. Dollar* (1947), 330 U.S. 731, 738, 91 L. Ed. 1209, 67 S. Ct. 1009.) Looking to the effect of the instant ordinance, which is the exclusion of City funds from the reach of creditors, we conclude that the ordinance does ordain sovereign immunity. This conclusion is supported by the City's motion to quash, filed in the trial court, which asserted that the ordinance granted "immunity" to the City's property and assets. Even more telling on this point is the preamble to the ordinance itself, which provides in part, "whereas the legislature of the State of Illinois has not enacted any statutes dealing with or granting sovereign immunity as to supplementary proceedings relating to local units of government * * *." We conclude that the ordinance is an exercise in sovereign immunity. Having already determined that only the General Assembly may enact legislation concerning sovereign immunity, we further conclude that the City's ordinance No. 80-10043 is invalid.

■■■ An alternative basis for this conclusion is that the ordinance does not relate to the City's "government and affairs," within the meaning of article

VII, section 6 of the Illinois Constitution. Article VII, section 6(a) provides in pertinent part that:

> "A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. * * * Except as limited by this Section, a home rule unit may exercise any power and perform any function *pertaining to its government and affairs* including, but not limited to, the power to regulate for the protection of public health, safety, morals and welfare; to license; to tax; and to incur debt." (Emphasis added.) (Ill. Const. 1970, art. VII, §6(a).)

Where powers or functions of a home rule unit are concerned, the scope of authority granted to home rule units under section 6(a) is generally coextensive with that of the sovereign, except where such powers are limited expressly by the General Assembly. (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273, 367 N.E.2d 692.) In addition, the constitution mandates that "Powers and functions of home rule units are to be construed liberally." (Ill. Const. 1970, art. VII, §6(m).) The parties to the instant case have cited a number of law review articles bearing on the resolution of this issue. While these have provided helpful background information, our determination of this case depends ultimately on our supreme court's analysis of the scope of home rule power granted by section 6(a). (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 540, 338 N.E.2d 15.) A line of cases decided by our supreme court has indicated that certain functions do not pertain to a home rule unit's government and affairs and hence are not appropriate subjects for municipal legislation. (See, *e.g., County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553; *People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 480, 368 N.E.2d 100; *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, and *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 322 N.E.2d 11.) These cases have invalidated ordinances on the basis of a statewide, rather than local, interest in the subject matter of the ordinance. As stated in *Ampersand*, " 'the powers of home rule units relate to their own problems, not to those of the state or the nation.' * * * Although mindful of the liberal construction mandate, we have struck down home rule ordinances where they did not pertain to the government or affairs of the local unit." (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542.) The supreme court has found the presence of a statewide interest to be indicated by constitutional provisions committing the area in question to a specific branch of government. In *John Sexton Contractors Co.* and *Pollution Control Board*, zoning restrictions dealing respectively with landfills and a city's power to regulate garbage collection and disposal, were held to be limited by article XI of the Constitution, which mandates

the legislature to set standards for environmental control. In *Ampersand,* a home rule unit's power was held not to extend to the collection of a library fee with the filing of civil pleadings because that tax constituted a "condition to the right to litigate in the courts" which could only be imposed by the State, not by a home rule unit. (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542.) The court's analysis relied heavily on the single unified court system, which was committed to the State by article VI. (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542.) In *Lignoul* the court found statewide concern for the regulation of the banking industry in article XIII, section 8 of the 1970 Illinois Constitution. (*People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 480, 487.) In the instant case McLorn argues that section 4 of article XIII of the 1970 Illinois Constitution similarly provides a constitutional indication that the ordinance in question is an exercise of power properly belonging to the State alone. Because we have already determined that only the General Assembly may re-establish sovereign immunity, we agree with this contention. The City argues that it is vitally interested in preventing the disruption of funds needed to continue basic city services. This argument pertains to the desirability of sovereign immunity for municipal corporations rather than to what the constitution actually provides. As such, the argument is better addressed to the General Assembly than to this court. We note, parenthetically, that the General Assembly has not immunized home rule units from either the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*; see the Local Governmental and Governmental Employees Tort Immunity Act, Ill. Rev. Stat. 1979, ch. 85, par. 2—101(c)), or an "Act in regard to Garnishment" (Ill. Rev. Stat. 1979, ch. 62, pars. 33-52). Merely because the General Assembly has refrained from accomplishing that which the City deems desirable is not reason enough to justify the ordinance in question. Because power over sovereign immunity is vested solely in the General Assembly, sovereign immunity does not pertain to a home rule unit's government and affairs. We conclude that the City's ordinance is therefore invalid. Because the ordinance is invalid, the trial court correctly refused to quash the garnishment summons and should therefore be affirmed.

Affirmed.

KASSERMAN, J., concurs.

PRESIDING JUSTICE KARNS, dissenting:
I do not consider this case to involve a question of sovereign immunity. Article IV, section 26 of the Illinois Constitution of 1870 stated that the State of Illinois could not be made a defendant in any court of law

or equity. The proscription never applied against units of local government (*People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 120 N.E.2d 35) and has been abolished altogether in the Illinois Constitution of 1970 except as provided by the General Assembly. Ill. Const. 1970, art. XIII, §4.

Here, the City of East St. Louis was properly made a defendant in the Circuit Court of St. Clair County and judgment was properly entered against it when it failed to pay the award made to plaintiff under the Workers' Compensation Act. (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(g).) No question arises as to the propriety of that judgment.

We are here concerned with the proper method of satisfying that judgment, and this question does not present a sovereign immunity question, or a question involving the home rule powers of the City of East St. Louis, in my opinion.

Beginning with the *City of Chicago v. Hasley* (1861), 25 Ill. 485, orig. ed. 595, a long line of cases has held that execution cannot be levied against a municipal corporation on a judgment recovered against it, even though no exemption for cities or units of local government has ever appeared in the statutes, just as no such exemption appears in the Garnishment Act. (See Ill. Rev. Stat. 1979, ch. 77, par. 1 *et seq.*; ch. 62, par. 33 *et seq.*) This judicially created exemption was justified not on consideration of sovereign immunity, but on considerations of public policy. As stated in *Hasley*:

> Levying on and selling such property, and removing it, would work the most serious injury in any city. Many of our cities, Chicago especially, have costly water works, indispensable to the lives and health of the citizens. These works are as much the property of the city as any other it may control, and, in appellee's view, liable to be seized and sold on execution, to the great discomfort and probable ruin of the inhabitants. Fire engines are also indispensable; they too can be seized and sold, and a great city exposed to the ravages of fire, and all this to enable one or more creditors of the city to obtain the fruits of judgments against the city, which, by another process, not producing any of these destructive inconveniences, they could fully obtain. The money raised by taxation could also be levied upon, and the whole business of the city be broken up and deranged. Its offices and office furniture, its jails, hospitals and other public buildings, taken from the corporate authorities, and sold to strangers, who would have a right to the exclusive possession of them, if not redeemed. In the absence of an express statute authorizing a proceeding, fraught with such consequences, we must hold that a *fi. fa.* cannot issue against the city of Chicago." 25 Ill. 485, 487.

If the tangible property of the city cannot be taken on execution, can the budgeted, operating revenues of the city, the revenues raised by taxation for public purposes on deposit in a financial institution be taken by garnishment? I should think not; garnishment is but a form of execution designed to reach debts owing the judgment debtor and property of the judgment debtor in the hands of third parties.

It should be emphasized that the funds sought to be reached here are the operating revenues of the city. These are not funds owing to city employees which the supreme court has held subject to the Wage Deduction Act in *Henderson v. Foster* (1974), 59 Ill. 2d 343, 319 N.E.2d 789. In overruling prior inconsistent cases holding that municipalities and units of local government were immune from garnishment in actions to reach wages owing employees who were judgment debtors, the court emphasized that public funds were not put in jeopardy. Here, public funds would be put in jeopardy. In overruling prior inconsistent decisions, I do not believe the court intended to overrule *Hasley* and other cases holding municipalities exempt from execution to satisfy judgments taken against the municipal corporation, as entirely different considerations are involved.

The exemption of municipal corporations from execution or garnishment to satisfy judgment debts is the general rule prevailing in the United States. It is the general rule that judgments against municipal corporations are not liens on property held for public use, including funds raised by taxation or funds appropriated for specific purposes. Such funds and property are exempt from execution or garnishment unless a specific statute provides otherwise. See 64 C.J.S. *Municipal Corporations* §§2211f, 2212 (1950).

Municipal corporations, just as counties, may not, however, refuse to satisfy judgments entered against them. (See Ill. Rev. Stat. 1979, ch. 34, par. 604.) There has always been an orderly method by which judgment creditors can compel, by *mandamus*, the satisfaction of judgments by payment or the levy of a tax sufficient to raise a fund to satisfy outstanding judgments against the municipality. See Ill. Rev. Stat. 1979, ch. 24, par. 8—1—6.