City of Chicago *v.* Hasley.

---

THE CITY OF CHICAGO, Plaintiff in Error, *v.* GEORGE H. HASLEY, Defendant in Error.

ERROR TO THE SUPERIOR COURT OF CHICAGO.

An execution cannot be issued against a municipal corporation, on a judgment for debt or damages recovered against it.

THE defendant in error recovered a judgment in an action of assumpsit, against the city of Chicago for the sum of one thousand dollars. On this judgment a writ of *fieri facias* against the city was issued on the eighth of August, A. D. 1859. A motion to set aside this execution was made in and overruled by the Superior Court of the city of Chicago, in the month of June of the same year. Upon the overruling of this motion, error was assigned.

G. F. CROCKER, and E. ANTHONY, for Plaintiff in Error.

E. F. RUNYON, for Defendant in Error.

BREESE, J. This case comes before us on a writ of error to the Superior Court of the city of Chicago refusing to quash an execution issued against the city, on a judgment for damages awarded the defendant in error, on an assessment of damages occasioned by taking certain land of the defendant for an alley-way in said city, and the only question is, can the ordinary writ of *fieri facias* legally be issued against a municipal corporation, on a judgment for debt or damages recovered against it?

There can be no doubt that the property of a private corporation may be seized and sold under a *fi. fa.* for the payment of its debts, as in the case of an individual, such corporation being bound to provide for its just debts, whether payment is made by a forced sale of its property for that purpose, or with money from its safe.

The nature, objects and liabilities of political, municipal or public corporations, we think stand on different grounds. These corporations signify a community, and are clothed with very extensive civil authority and political power. All municipal corporations are both public and political bodies. They are the

embodiment of so much political power, as may be adjudged necessary, by the legislature granting the charter, for the proper government of the people within the limits of the city or town incorporated, and for the due and efficient administration of their local affairs. For these purposes, the authorities can raise revenue by taxation, make public improvements, and defray the expenses thereof by taxation, exercise certain judicial powers, and generally act within their limited spheres, as any other political body, restrained only by the charters creating them— beyond them, they cannot go. This power of taxation is plenary, and furnishes, ordinarily, the only means such corporations possess, by which to pay their debts. They cannot be said to possess property liable to execution, in the sense an individual owns property so subject, for they have the control of the corporate property only for corporate purposes, and to be used and disposed of to promote such purposes, and such only. Levying on and selling such property, and removing it, would work the most serious injury in any city. Many of our cities, Chicago especially, have costly water works, indispensable to the lives and health of the citizens. These works are as much the property of the city as any other it may control, and, in appellee's view, liable to be seized and sold on execution, to the great discomfort and probable ruin of the inhabitants. Fire engines are also indispensable; they too can be seized and sold, and a great city exposed to the ravages of fire, and all this to enable one or more creditors of the city to obtain the fruits of judgments against the city, which, by another process, not producing any of these destructive inconveniencies, they could fully obtain. The money raised by taxation could also be levied upon, and the whole business of the city be broken up and deranged. Its offices and office furniture, its jails, hospitals and other public buildings, taken from the corporate authorities, and sold to strangers, who would have a right to the exclusive possession of them, if not redeemed. In the absence of an express statute authorizing a proceeding, fraught with such consequences, we must hold, that a *fi. fa.* cannot issue against the city of Chicago.

It is argued by the appellee, in opposition to these views, that by the first section of chapter 57, entitled Judgments and Executions (Scates' Comp. 602), and the 29th section, chapter 90, (*ib.* 722), such corporations are embraced. The first section referred to provides, in substance, for the issuing execution against the lands and tenements, goods and chattels, and real estate of every person, against whom a judgment is rendered in any court of record either at law or in equity, and that the word "person," by section 29 of chapter 90, includes bodies politic and corporate, as well as individuals. This legislation

can have full effect by linking the words, bodies politic and corporate, to private corporations, or to such public corporations as are not wholly municipal, and this we think is the restricted sense in which the legislature intended they should be used and applied. They never could have intended they should embrace an incorporated city or town, or any such municipal and political corporations.

It is urged, further, that inasmuch as the legislature has made a special provision in favor of counties, exempting them and their property from the operation of such writs, the inference is that they were the only municipal corporations they intended to exempt. We cannot, from anything contained in that section, or in the act itself, (section 20, chap. 27—Scates' Comp. 300,) draw any such inference, as the subject matter then before the legislature was counties and county courts—about them and them only were they legislating. Before we can assent to the proposition, that political corporations, clothed with so many important powers of government, and so essential to be sustained in the exercise of all their rights and privileges, and be secured in their property and means by which their functions can be properly exercised for the benefit of the citizen, we must see some positive act of the legislature authorizing the issuing of such writ. The property of such corporations, and the taxes collected by them for public purposes, are a constituent part, and a necessary ingredient of their public power, and are no more liable to seizure and sale than the whole power itself would be. If not so, a party obtaining a judgment against the city would be able to do indirectly what no power short of the legislature can do—destroy the corporate powers and franchises by taking away the aliment which sustains them. Under our constitution it cannot be admitted that any power or any individual possesses, directly or indirectly, such an overwhelming influence over other powers as would enable either of them to put an end to their functions, and thus disorganize the government. It cannot be so. The power, if conceded, to seize the property of the corporation would involve the right to seize its revenues, and this involves the right to destroy the corporation. The power to create the corporation of the city of Chicago for purposes of local government, involves the power to preserve and protect it; but that protection would be unavailing, if the corporation could be deprived of the means without which it could not perform this function. For all useful and practical purposes, we think the exercise of the right claimed by the judgment creditor in this case would as effectually annul the charter of the city, as if it had been repealed by law. This would be repugnant to the spirit of the constitution.

It is true, by the charter of the city it can sue and be sued, but it is not an inference, that if sued and a judgment passes against it, an ordinary writ of *fieri facias* can issue, under which its corporate property can be seized and sold. Nor is there any necessity for such writ. On a debt being ascertained by judgment against the city, and a refusal to pay it, a mandamus can issue to compel payment or to compel a levy of taxes sufficient to discharge the judgment. This is the only legal way in which payment can or ought to be enforced. Some adjudged cases have been referred to by appellant as having a bearing on this, but we do not deem it necessary to consider them very carefully—they appear to have been decided upon some statutory provisions. We decide this on principle, and in so doing reverse the judgment of the Superior Court and remand the cause, with directions to that court to enter an order quashing the execution.

*Execution quashed.*

*Dissenting opinion by* MR. JUSTICE WALKER. After a careful examination of all the authorities, and a mature consideration of the reasons presenting themselves to my mind, I am unable to concur in the conclusion at which my associates have arrived in this case. Owing to the importance of the question involved, I feel constrained to present a portion of the reasons which have led me to the conclusion at which I have arrived. These bodies, like ordinary corporations, derive all their powers from the sovereignty of the State, and are completely under its control. They are, it is true, created alone for the better government of the local division to which their jurisdiction is confined, and that jurisdiction may be curtailed or enlarged at pleasure by the legislature. The object of their organization is not the advancement of individual gain, commercial enterprise or pecuniary interest, either of individuals or the body politic. This seems to be the distinguishing feature between bodies of this description and private corporations, which are usually created for some, if not all, of these purposes. As municipal corporations are created alone for public and not for private benefit, it may constitute a cogent reason why the legislature should exempt their property from sale on execution, or that such process should not issue against them, but does not, as I conceive, create the exemption.

If such an exemption exists, I feel confident that it is not by the common law. After a careful search of all the elementary books and reports of adjudged cases which have come within my reach, I am unable to find that such a rule has ever been announced. I find at the common law they were liable to be

sued, and judgment rendered against them precisely as if they were corporations created for private purposes. When it is remembered that the execution is the fruit of the judgment, if such an important exception existed, it would certainly have been announced either in Great Britain or some of the States of the Union. To my mind the fact that the question has never arisen, is conclusive that such an exception does not exist at the common law.

On the argument it was urged, that as the legislature has provided that execution shall not be issued upon judgments recovered against counties, for the same reason municipal corporations were designed to be embraced. To my mind it is only necessary to refer to the rule of interpretation, that the expression of one thing is the exclusion of another, as a complete answer to this position. If cities, towns, villages, or other such bodies, had been designed to be embraced, it seems to my mind that very different and more appropriate language would have been employed. Of all the various bodies of this character, which then existed, one only is specified. If all were designed to have been embraced, why not extend the exemption in terms to municipal corporations, or specify others as they did counties.

Again, the 29th section of the division entitled Laws (Scates' Comp. 722,) provides that " The word person or persons, as well as all words referring to or importing persons, shall be deemed to extend to and include bodies politic and corporate, as well as individuals." It will, it seems to me, hardly be contended that this provision does not embrace such bodies. It seems to my mind that nothing contained in the provision can be construed into an exemption of municipal corporations. Such bodies are regarded by all as being embraced in bodies politic.

The first section of the division entitled Judgments and Executions (Scates' Comp. 602,) provides, that " All and singular the goods and chattels, lands, tenements and real estate, of every person against whom any judgment has been, or hereafter shall be obtained, in any court of record, either at law or in equity, for `any debt, damages, costs, or other sum of money, shall be liable to be sold upon execution, to be issued upon such judgment." Then if, as the statute has declared, the word person, wherever used in the code, of which the latter of these provisions is found, shall embrace bodies corporate and politic, it would seem to follow that incorporated cities are as fully embraced as if named by express terms. If so, it follows as an inevitable conclusion that their property, both personal and real, is subject to sale on execution.

It will be conceded that this city is a body politic or corporate, as its charter has in terms declared that it shall be a "corporation by the name of the city of Chicago," and by that name may sue and be sued, complain and defend in any court. Nor does the charter exempt the city from having its property sold on execution. It would also seem that when the General Assembly provided that the corporation might be sued, that as they failed to relieve it from the effects and consequences of a recovery in ordinary cases, that it must have been the design of the law-making power to leave them in precisely the same situation as individuals, or private corporations.

Again, the legislature gave, it seems to me, an interpretation to the provision prohibiting executions from issuing against counties, when they exempted school districts from having executions issued upon judgments rendered against them. If the provision in relation to counties was designed to apply to all corporations created for public benefit, why make a similar provision in reference to school districts, which are declared to be bodies politic and corporate, with power to sue and be sued? It must have been because they supposed that execution would, by force of the law, follow the judgment, unless prohibited.

So far as my information has extended, the profession have regarded the practice as warranting an execution against such a body. From all these considerations, I am constrained to believe such is the law, until it is changed by the General Assembly.