Theresa A. Brazil, Plaintiff, v. City of Chicago, Defendant.
Hattie Hickey, Executrix of Last Will and Testament of Francis A. Hickey, Deceased, Appellee, v. City of Chicago, Appellant.

Gen. No. 42,064.

Heard in the third division of this court for the first district at the December term, 1941. Opinion filed June 24, 1942.

BARNET HODES, Corporation Counsel, for appellant; JAMES A. VELDE, CARL H. LUNDQUIST and ALPHONSE CERZA, Assistant Corporation Counsel, of counsel.

MONAHAN & MONAHAN and A. E. MINETOR, all of Chicago, for appellee; A. E. MINETOR and RENO H. BRINDLEY, both of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.
Hattie Hickey, executrix of the will of Francis A. Hickey, deceased, filed a petition to enforce an attorney's lien alleged to exist as to a judgment against the City of Chicago. The hearing on the petition was had

before the court without a jury, and judgment was entered by the trial court in favor of the petitioner and against the City of Chicago in the sum of $1,553.19 and costs, from which judgment defendant appeals.

The facts, as suggested by the briefs filed, are that Theresa A. Brazil employed an attorney, Thomas J. Hickey, to represent her in connection with a claim arising from an injury to her on September 7, 1929 on a public street in the City of Chicago. Hickey's associate, John S. Hall, prepared a document entitled "Notice of Attorneys' Lien, Under the Laws of 1909," which was directed to the City of Chicago and stated the facts about the employment of Hickey by Theresa A. Brazil, including an agreement to pay a fee of one third of the amount recovered, and was signed by Hickey. John S. Hall, a witness, testified that on February 14, 1930 he "served the notice on the City of Chicago." William D. Saltiel was then the city attorney. The receipt for the notice was signed in the name of Saltiel by "one of the assistants in his office, Frietberg, or some name like that." The form of receipt attached to the notice introduced in evidence is signed "William D. Saltiel— E. F." Hall testified that he left with the assistant a copy of the notice.

On April 17, 1930, Theresa A. Brazil filed suit against the City of Chicago. On May 2, 1931 she secured a judgment against the City of Chicago in the sum of $3,500 and costs. On October 20, 1937 the City of Chicago paid her the sum of $4,659.58, which constituted the full amount of the judgment plus costs and interest. In 1932 Thomas J. Hickey died. Francis A. Hickey, sole heir and legatee of Thomas J. Hickey, deceased, and executrix of his will, died in 1939 and the petitioner Hattie Hickey, was appointed executrix of the last will and testament of Francis A. Hickey. On July 8, 1940 an amended petition was filed to enforce the alleged attorney's lien. An answer was filed by the city, alleging that the records of the office of the city comptroller, who

pays judgments against the city, do not show that the alleged notice of attorney's lien had ever been filed or served. Attached to the answer is an affidavit of A. M. Smietanka (successor of William D. Saltiel) to the effect that the records of his office contained no copy or record of a notice of attorney's lien served on the city attorney in this matter. Judgment was entered in favor of the petitioner and against the City of Chicago in the sum of $1,553.19 and costs, being one third of the amount paid Theresa A. Brazil.

Petitioner seeks to establish a lien under the so-called Attorney's Lien Act, passed in 1909 (par. 14, ch. 13, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 9.13]) which reads as follows:

"Sec. 1. That attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action. Provided, however, such attorneys shall serve notice in writing, which service may be made by registered mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action, and such lien shall attach to any verdict, judgment or decree entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the aforesaid notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than five days' notice to the adverse party, adjudicate the rights of the parties

and enforce such lien in term time or vacation. (As amended by act approved June 30, 1927. L. 1927, p. 186.)''

This statute creates a lien in favor of attorneys on all claims placed in their hands for suit or collection, and requires the defendant, after due notice, to respect the lien. (*Standidge v. Chicago Rys. Co.,* 254 Ill. 524.) It is urged by defendant that it is against public policy to compel a municipality to be involved in litigation which concerns private persons. A garnishment suit will not lie against the City of Chicago. (*Merwin v. City of Chicago,* 45 Ill. 133.) Nor will a creditor's bill, seeking to collect money due a private person from a municipality, lie against the City of Chicago and its officers. (*Addyston Pipe & Steel Co. v. City of Chicago,* 170 Ill. 580; *Lamb v. Lamb,* 256 Ill. App. 226.)

The manifest purpose of the attorney's lien statute is to assist attorneys in collecting their fees. Primarily the client who hires the lawyer is liable for the services of his lawyer, and the attorney's lien statute does not change this rule. (*Case v. Emerson-Brantingham Co.,* 269 Ill. 94.) It is urged by defendant that consequently, the statute establishes certain rights and obligations between litigants. In the case at bar a private controversy exists between petitioner, Hattie Hickey, and the plaintiff, Theresa A. Brazil. Plaintiff has not paid her attorney for services rendered, although she has received full payment of the judgment that he helped her obtain. It is urged that in many cases a defendant served with an attorney's lien is compelled to participate in litigation between attorney and client as to the terms of the contract between them; and further, that if the City of Chicago should not be harrassed in a garnishment suit or a creditor's bill, surely it should not become involved in this kind of controversy pertaining to purely private interests.

The petitioner replies that defendant's contention that the attorney's lien statute does not apply to the

City of Chicago, receives no substantial support from the legal authorities cited in defendant's brief and argument, and states that the first three cases have to do with garnishments, while the fourth case reported in 269 Ill. 94, involves an attorney's lien, but contends that its application in that case is on a much different premise than it is in the case at bar.

In discussing the cases called to the attention of this court, and which we believe applicable in the instant case as to the right of the plaintiff in this action to recover under the statute in question, we have first the case of *Merwin v. City of Chicago,* 45 Ill. 133. That was an action by the plaintiff to recover in a suit in attachment against the city, in which the city was summoned as a garnishee. The city, without having answered, was on motion discharged by the court and judgment rendered against appellant for costs. The Supreme Court in passing upon the questions involved cited the case of *City of Chicago v. Hasley,* 25 Ill. 595, where it was held that the property of such a municipal corporation could not be levied on and sold under execution, and which decision was placed upon the grounds of public policy. However strong the obligation of a town or city to pay its debts, it was considered that to allow payment to be enforced by execution would so far impair the usefulness and power of the corporation, in the discharge of its government functions, that the public good required the denial of such a right. It was held that the 29th section of chapter 91 of the Revised Statutes, by which it is provided that the term "persons," when used in the statutes, shall include corporations, must be construed in the statute of judgments and executions, as referring to private corporations. In the *Merwin* case it was said by the court:

"Although this decision (referring to the *Hasley* case, supra) is not conclusive upon the question before us as *res adjudicata,* yet the entire spirit and reasoning upon which it is based must lead us to hold, that a munic-

ipal corporation is not liable to process of garnishment. The question has been often before the American courts, and although the decisions are not uniform, in a large majority of the cases it has been held the writ would not lie. The reason given for these decisions is uniformly the same, and is substantially that given by this court in the case in 25th Ill. It must be decided as a question of public policy. These municipal corporations are in the exercise of governmental powers to a very large extent. They control pecuniary interest of great magnitude, and vast numbers of human beings, who are more dependent on the municipal, for the security of life and property, than they are on either the State or the federal government. To permit the great public duties of this corporation to be imperfectly performed, in order that individuals may the better collect their private debts, would be to pervert the great objects of its creation." And again in the case entitled *Addyston Pipe & Steel Co. v. City of Chicago*, 170 Ill. 580, it was held that a creditor's bill will not lie against a municipal corporation to enable complainant to reach a debt owing by the municipal corporation to a third party. There the court said;

"This court held in *City of Chicago v. Hasley*, 25 Ill. 485, that the property of a municipal corporation like Chicago could not be levied upon and sold under an execution. This decision was predicated upon the ground of public policy. It is there said (p. 486) : 'There can be no doubt that the property of a private corporation may be seized and sold under a *fi. fa.* for the payment of its debts, as in the case of an individual. . . . The nature, objects and liabilities of political, municipal or public corporations, we think, stand on different grounds. These corporations signify a community, and are clothed with very extensive civil authority and political power. All municipal corporations are both public and political bodies. They are the embodiment of so much political power as may be adjudged necessary by the legislature granting the charter for the proper govern-

ment of the people within the limits of the city or town incorporated. . . . For these purposes the authorities can raise revenue by taxation, make public improvements and defray the expenses thereof by taxation.' The court then goes on to show that if the property of the city could be levied on and sold it would be impossible for it to perform the functions for the people for which it was created." Then in the case of *Lamb v. Lamb*, 256 Ill. App. 226, Mary J. Lamb filed her bill in the nature of a creditor's bill against Dennis J. Lamb, the substance of which was that she had obtained a judgment of more than $6,000 against Dennis J. Lamb and had exhausted all means under the law in an unsuccessful attempt to collect it; that Dennis J. Lamb was a civil service employee of the City of Chicago at a salary of $225 a month; and prayed that a receiver be appointed to collect Dennis J. Lamb's salary and to apply the proceeds towards satisfaction of the judgment. Dennis J. Lamb alone was made a party defendant. He filed his demurrer, which was overruled and the bill was then taken as confessed against him. A receiver was appointed to collect and receive his salary as it came due. Afterwards a demand was made by the receiver on the comptroller and his deputy for the salary earned after the appointment of the receiver. The demand was refused and a petition was thereafter filed by the receiver asking that a rule be entered that the comptroller and his deputy show cause why they should not be punished for contempt of court. The rule was entered and the comptroller and his deputy filed a joint and several answer. Afterwards the court found defendants guilty of contempt and imposed a fine against each as stated. Upon appeal by the comptroller and his deputy, this court said;

"The comptroller and his deputy contend that the court was without authority to enter the order finding them guilty of a contempt of court; that the City of Chicago is a municipal corporation existing for the public

welfare and cannot be compelled, under the law, to pay the salary of one of its employees to a receiver appointed in a suit which is in the nature of a creditor's bill. . . ." The court then cites and quotes with approval from the case entitled *Addyston Pipe & Steel Co. v. City of Chicago,* 170 Ill. 580, to and from which decision we have referred and quoted in this opinion. Continuing, the court said in the *Lamb* case;

"Counsel for the complainant, Mary J. Lamb, seeks to distinguish this case (*Addyston Pipe Company* case) from the one at bar, as we understand the argument, on the ground that in the instant case, the City of Chicago was not a party to the creditor's bill, but we think the distinction does not alter the legal principle involved; nor do we think it would serve any useful purpose to discuss the cases of *Wren v. Dooley,* 97 Ill. App. 88; *Singer & Talcott Stone Co. v. Wheeler,* 6 Ill. App. 225, relied upon by complainant, because we are of the opinion that we are bound by the holding of the Supreme Court in the *Addyston Pipe Co.* case. If a receiver might be appointed for each employee of the City of Chicago where an unsatisfied judgment was obtained against him, the city might be drawn into numerous cases in which it had no interest; and under the rule announced in the *Addyston Pipe Co.* case, this would be against public policy."

When we come to consider the facts in the instant case, we find that there was a judgment entered against the city for $1,553.19 and costs. To enforce the collection of this amount from the city it will be necessary that an execution be issued and levied upon the property of the city, a municipal corporation. Under the authorities cited and quoted from in this opinion, we are of the opinion that the court erred in entering the judgment herein in favor of petitioner for the reason that a municipal corporation cannot be, as has been held in the *Addyston Pipe Co.* case, 170 Ill. 580, made an instrument or agency for the collection of private debts. To

do so would demand the expenditure of money in its treasury in order that one private individual might collect a demand due from another. We believe under the circumstances that the judgment that was entered by the court should be reversed.

There is a further question as to whether proper notice of the lien claim was served upon the proper officer of the city, but having reached the conclusion that the court was in error in entering judgment for the reasons already stated in this opinion, it will be unnecessary to pass upon the question of proper notice.

*Judgment reversed.*

BURKE, P. J., and KILEY, J., concur.