ESTATE OF WALTER DeBOW, Lola Murray, as Special Adm'r, Plaintiff-Appellee, v. THE CITY OF EAST ST. LOUIS, Defendant-Appellant.

Fifth District   No. 5—90—0727

Opinion filed May 4, 1992.—Rehearing denied June 16, 1992.

438

HARRISON, J., concurring in part and dissenting in part.
WELCH, J., dissenting in part and concurring in part.

Edward L. Welch, of Edwardsville, for appellant.

Clyde L. Kuehn, of Kuehn & Trentman, of Belleville, for appellee.

JUSTICE RARICK delivered the decision of the court:

On May 17, 1985, the estate of Walter DeBow (Estate) was awarded a $3.4 million jury verdict against the City of East St. Louis (City) for injuries sustained by Walter DeBow while he was being held in the municipal jail. DeBow is physically and mentally disabled and resides in a nursing home at a cost of $325 per day. The City appealed the judgment and this court affirmed. *DeBow v. City of East St. Louis* (1987), 158 Ill. App. 3d 27, 510 N.E.2d 895.

Despite repeated requests by the Estate for satisfaction of the judgment, the City refused to make payment. In March 1988, the Estate filed nonwage garnishments against the City's bank accounts. In return for the Estate's release of the garnishments, the City agreed to pay interest on the judgment and also issued a series of bonds, payable to the Estate, for the principal of the judgment and interest. These bonds will not be paid in full until the year 2004.

On September 21, 1990, the Estate filed a citation to discover assets and to effect execution of the judgment against the City. The citation was heard in the circuit court of St. Clair County on September 27, 1990. The Estate asked the court to execute on certain real property owned by the City, to wit, the City Hall and 220 acres of vacant ground, a former industrial site. The Estate asked the court to either order the City to execute deeds to the property or execute the deeds for the City pursuant to sections 2—1402 and 2—1304 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—1402, 2—1304). The City objected, arguing that it would like the opportunity to respond to the Estate's motion in writing. The City was given a 10-minute recess in which to review the Estate's motion and prepare an oral

response. After the recess, the City again argued that it was unfair to require it to respond to the Estate's motion without more time to prepare. Over the City's objection, the court executed, on behalf of the City, two quitclaim deeds conveying to the Estate of Walter DeBow the East St. Louis City Hall and 220 acres of vacant ground. The Estate was authorized to sell the property but was required to make an accounting of any sale within 90 days, with any excess sale proceeds to be paid over to the City. A written order was entered September 27, 1990. The Estate executed a full and complete satisfaction of judgment to the City and a full and complete release in favor of the City.

On October 5, 1990, the City filed a motion to reconsider, asking the court to vacate and stay execution of the order of September 27, 1990. On October 31, 1990, the Estate filed a motion to dismiss the City's motion to reconsider. This motion argued that the City's motion to reconsider did not toll the 30-day time period during which the court retained jurisdiction over the case, and therefore, the court no longer had jurisdiction to hear the motion to reconsider. The Estate's motion also alleged that the motion to reconsider was moot pursuant to Supreme Court Rule 305(i) (134 Ill. 2d R. 305(i)), in that the City had failed to obtain a stay of the court's order of September 27, 1990, and the Estate had transferred the real estate to a third-party purchaser. Attached to the Estate's motion to dismiss was an affidavit of Eric Rhein, trustee for a certain land trust, GSA33. The affidavit recites that GSA33 obtained title to the real estate in question from the Estate of Walter DeBow, that the Estate has no interest in GSA33, that neither the trustee nor GSA33 has acted as a nominee of the Estate, and that GSA33 was not a party to the litigation between the Estate and the City in which the Estate acquired title to the real estate. A guardian's deed attached to the motion to dismiss shows that the real estate was transferred by the Estate to GSA33 on September 28, 1990.

On November 1, 1990, the court entered an order granting the Estate's motion to dismiss the City's motion to reconsider. The order found that the court was without jurisdiction to hear the motion to reconsider because more than 30 days had elapsed from entry of the judgment sought to be reconsidered and the motion to reconsider did not toll the 30-day time period during which the court retains jurisdiction of the cause. The order further found that, if the court did have jurisdiction, it would nevertheless be bound to dismiss the motion to reconsider on the ground of mootness under Supreme Court Rule 305(i) (134 Ill. 2d R. 305(i)). The City had failed to perfect a stay of

the order of September 27, 1990, and the Estate had transferred the subject real estate to a nonrelated third-party purchaser.

The City appeals, arguing that the property of a municipal corporation is not subject to execution to satisfy a debt owed to a judgment creditor. The City also argues that the trial court abused its discretion in not allowing the City adequate time in which to respond to the Estate's request for execution on City property.

On November 21, 1990, the Estate filed a motion to dismiss the appeal, arguing that this court lacks jurisdiction for the same reason the trial court lacked jurisdiction to hear the City's motion to reconsider and also that the issues raised in the appeal are moot in that, in the absence of a stay under Supreme Court Rule 305, the Estate transferred the subject real estate to a third-party purchaser, which transfer, pursuant to Supreme Court Rule 305(i), cannot be affected by a reversal or modification of the trial court's order. 134 Ill. 2d R. 305.

On January 2, 1991, this court entered an order denying the Estate's motion to dismiss the appeal on the basis of lack of jurisdiction and ordering that the motion to dismiss on the basis of mootness be taken with the case. We will address that motion first.

Supreme Court Rule 305(b) (134 Ill. 2d R. 305(b)) provides that an appellant may seek a stay pending review in the trial court or, if unsuccessful there, in the appellate court. While an appeal bond is ordinarily required, where the appeal is prosecuted by a municipal corporation, as here, the court may stay the judgment pending appeal without requiring that any bond be given. (134 Ill. 2d R. 305(g).) However, Rule 305(i) provides that, if a stay is not perfected within 30 days of the entry of the judgment appealed from, or within any extension of time granted, the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed. (134 Ill. 2d R. 305(i).) It is this paragraph with which we are particularly concerned.

It is now well established that, in the absence of a stay, an appeal is moot if specific property, possession or ownership of which is the relief being sought on appeal, has been conveyed to third parties. (*Town of Libertyville v. Moran* (1989), 179 Ill. App. 3d 880, 886, 535 N.E.2d 82, 86.) This is because Rule 305(i) provides that reversal or modification of a judgment on appeal does not affect the right, title or interest of a third party in property where that property is transferred to the third party after the judgment appealed from becomes final

and before the judgment is stayed. (134 Ill. 2d R. 305(i).) The record must unequivocally disclose, however, that the third party was not a party, or a nominee of a party, to the litigation from which the appeal was taken. 134 Ill. 2d R. 305(i); *Moran*, 179 Ill. App. 3d at 886, 535 N.E.2d at 86.

In the instant case, there is no question that the relief being sought by appellant/City is reversal of the order of September 27, 1990, conveying certain real estate to the Estate. The City sought but failed to perfect a stay of this order. It is equally clear that the Estate transferred the real estate to a third party, trust GSA33, on September 28, 1990, one day after entry of the order conveying the property to the Estate. Finally, the affidavit of Eric Rhein unequivocally discloses that this third party was not a party, or a nominee of a party, to the litigation between the City and the Estate. Thus, it would appear that, pursuant to Rule 305(i), reversal or modification of the judgment of September 27, 1990, which appellant/City seeks, would not affect the right, title or interest of the third party in the subject real estate.

Citing *City of Chicago v. Hasley* (1861), 25 Ill. 595, and cases following, the City argues that property of a municipal corporation cannot be taken by a judgment creditor to satisfy the judgment. To so allow, stated the *Hasley* court, would be to allow a party obtaining a judgment against the municipality to destroy it by taking away the property which sustains it. (25 Ill. at 597.) The court stated:

> "The property of such corporations, and the taxes collected by them for public purposes, are a constituent part, and a necessary ingredient of their public power, and are no more liable to seizure and sale than the whole power itself would be. If not so, a party obtaining a judgment against the city would be able to do indirectly what no power short of the legislature can do— destroy the corporate powers and franchises by taking away the aliment which sustains them. Under our constitution it cannot be admitted that any power or any individual possesses, directly or indirectly, such an overwhelming influence over other powers as would enable either of them to put an end to their functions, and thus disorganize the government. It cannot be so. The power, if conceded, to seize the property of the corporation would involve the right to seize its revenues, and this involves the right to destroy the corporation." (*Hasley*, 25 Ill. at 597.)

The *Hasley* court pointed out, however, that a judgment creditor is not without remedy, for he may bring a *mandamus* action to compel

payment or to compel a levy of taxes sufficient to discharge the judgment. *Hasley*, 25 Ill. at 597.

The *Hasley* rationale has been repeatedly relied on by our courts to hold that, indeed, property of a municipal corporation is not subject to execution to satisfy a judgment debt. (*Moore v. Town of Browning* (1940), 373 Ill. 583, 589, 27 N.E.2d 533, 536; *In re Application of County Collector* (1979), 79 Ill. App. 3d 151, 153, 398 N.E.2d 392, 394.) In 1982, the United States Court of Appeals, Seventh Circuit, citing *Hasley* and *Moore*, stated, "Illinois law does not allow holders of judgments against municipal corporations to collect by execution against the property of the municipal corporation." (*Evans v. City of Chicago* (7th Cir. 1982), 689 F.2d 1286, 1296, *overruled on other grounds* (7th Cir. 1989), 873 F.2d 1007.) *Evans* also pointed out that, "[n]evertheless, Illinois recognizes that a city has no higher duty than to pay the judgments against it and that it has no discretion to depart from statutory methods of payment." 689 F.2d at 1296.

*Hasley* was decided on the basis of public policy and not on any principles of sovereign immunity. (*Hasley*, 25 Ill. at 598.) Neither the Illinois Constitution of 1848 nor any statute or case law in effect at the time provided for sovereign immunity for municipalities. At the time of the *Hasley* decision, the charter of the City of Chicago allowed that the city could sue and be sued. The *Hasley* court stated, however, that this did not lead to the inference that once a judgment was obtained against the city the corporate property could be seized and sold. To the contrary, the court held, the only appropriate manner in which to enforce the judgment was through a writ of *mandamus* to compel payment of the judgment or to compel a levy of taxes sufficient to discharge the judgment. *Hasley*, 25 Ill. at 598.

In *Addyston Pipe & Steel Co. v. City of Chicago* (1897), 170 Ill. 580, 582, 48 N.E. 967, 968, our supreme court pointed out that *Hasley* had been predicated upon the grounds of public policy. The court reiterated the opinion in *Hasley* that, if the property of the city could be levied on and sold, it would be impossible for the city to perform the functions to the people for which it was created. 170 Ill. at 582, 48 N.E. at 968.

Again, in *Brazil v. City of Chicago* (1942), 315 Ill. App. 436, 440, 43 N.E.2d 212, 213, the court held that the decision in *Hasley*, that the property of a municipal corporation could not be levied on and sold under execution, was based upon the grounds of public policy. The court there stated that, "[h]owever strong the obligation of a town or city to pay its debts, it was considered that to allow payment to be enforced by execution would so far impair the usefulness and

power of the corporation, in the discharge of its government functions, that the public good required the denial of such a right." 315 Ill. App. at 440, 43 N.E.2d at 214.

Despite the absence of sovereign immunity at the time *Hasley* was decided, the court held that, on the basis of public policy, execution will not lie against the property of a municipality to satisfy a judgment debt. Because this decision was not based upon the doctrine of sovereign immunity, it was not altered or affected by the abolition, by our 1970 constitution, of sovereign immunity. The public policy upon which *Hasley* was based remains the policy of the State. That this is so is evident in several respects.

Numerous statutes exist which provide for the manner and method of payment by municipalities of judgment debts. (Ill. Rev. Stat. 1989, ch. 85, par. 9—102 *et seq.*; Ill. Rev. Stat. 1989, ch. 24, par. 8—1—16.) These include payment by installment, the issuance of bonds, the fixing of rates or charges on governmental services, the levy of taxes or self-insurance contracts. (Ill. Rev. Stat. 1989, ch. 85, par. 9—102.) Indeed, section 9—102 of the Local Governmental and Governmental Employees Tort Immunity Act, which provides limited immunity for local governmental units and their employees, provides that, "[a] local public entity is empowered and *directed* to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable *in the manner provided in this Article.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 85, par. 9—102.) No statute provides that a judgment creditor may execute upon property of the municipality. That the legislature has established methods of payment of municipal judgments which do not include execution on municipal property reflects the continuing public policy that city property may not be executed upon in order to satisfy a judgment debt. See *Henderson v. Foster* (1974), 59 Ill. 2d 343, 347-48, 319 N.E.2d 789, 792 ("[w]hen the legislature speaks upon a subject, upon which it has the constitutional power to legislate, public policy is what the statute, passed by it, indicates").

Furthermore, cases decided subsequent to 1970 continue to hold that a judgment creditor may not execute upon city property to satisfy the judgment. (*Evans,* 689 F.2d at 1296; *In re Application of County Collector,* 79 Ill. App. 3d at 153, 398 N.E.2d at 394.) Thus, the public policy that a judgment creditor may not execute on city property to satisfy his debt has survived the abolition of sovereign immunity by the constitution of 1970.

We acknowledge that the constitution of 1970 did change the public policy of this State with respect to sovereign immunity. We also acknowledge that sovereign immunity includes not only the right to sue but also the right to satisfy a judgment rendered upon suit. Certainly, the public policy with respect to the right to sue a municipality and the right to satisfy any judgment rendered against the municipality has changed to the extent governmental immunity has been abolished. However, that public policy change does not include the *manner* in which a judgment may be satisfied. While the constitution of 1970 changed the public policy of the State with respect to sovereign immunity so that one now can sue and can satisfy a judgment against a city, it did not change the public policy with respect to *how* a judgment may be satisfied. It remains the public policy of this State that, although one can sue a city and satisfy a judgment in one of the ways enumerated by statute, one cannot satisfy that judgment by execution against city property.

Finally, we acknowledge this court's decision in *McLorn v. City of East St. Louis* (1982), 105 Ill. App. 3d 148, 434 N.E.2d 44, which allowed a judgment creditor to garnish city funds held on deposit in bank accounts. In that case, the City of East St. Louis appealed the decision of the circuit court of St. Clair County finding invalid an ordinance passed by the City which provided that "[a]ll property or assets of local governmental units *** shall be immune and shall not be subject to garnishment actions by judgment creditors." (105 Ill. App. 3d at 150.) An individual holding a judgment against the City on a worker's compensation award had served a nonwage garnishment summons on a bank holding on deposit funds of the City. The City filed a motion to quash the summons on the ground that the aforementioned ordinance prohibited any such garnishment. The circuit court denied the motion to quash and ordered the bank to pay any City funds to the judgment creditor pursuant to the garnishment. This order was stayed pending appeal.

The only issue before the court on appeal was the validity of the ordinance. The court affirmed the finding of the circuit court that the ordinance was invalid on the basis that, pursuant to article 13, section 4, of the Illinois Constitution of 1970, only the General Assembly may establish sovereign immunity and the ordinance in question did, in fact, seek to establish sovereign immunity even though it restricted only the manner in which a judgment against the City may be collected. As an alternative basis for affirmance, the court found that enactment of the ordinance granting sovereign immunity is not within

the powers of a home rule unit but is a power which belongs to the legislature alone.

Because the issue was not directly presented to the court on appeal, it did not address the issue now before us, *i.e.*, whether the public policy, as expressed in the law of the State of Illinois, allows a judgment creditor to execute on, or garnish, city property to satisfy the judgment debt. The court did, however, state the following in *McLorn*:

> "The City argues that it is vitally interested in preventing the disruption of funds needed to continue basic city services. This argument pertains to the desirability of sovereign immunity for municipal corporations rather than to what the constitution actually provides. As such, the argument is better addressed to the General Assembly than to this court. *** Merely because the General Assembly has refrained from accomplishing that which the City deems desirable is not reason enough to justify the ordinance in question. Because power over sovereign immunity is vested solely in the General Assembly, sovereign immunity does not pertain to a home rule unit's government and affairs. We conclude that the City's ordinance is therefore invalid. Because the ordinance is invalid, the trial court correctly refused to quash the garnishment summons and should therefore be affirmed." (*McLorn*, 105 Ill. App. 3d at 154, 434 N.E.2d at 48.)

To the extent this language appears to express an opinion on the public policy, expressed in *Hasley* and its progeny, prohibiting execution against city property, we are of the opinion that it constitutes mere *obiter dicta* and, although it may be persuasive, it is not binding authority. (*Board of Trustees v. Illinois Human Rights Comm'n* (1986), 141 Ill. App. 3d 447, 456, 490 N.E.2d 232, 237.) General expressions in a court's opinion which go beyond what is necessary to decide a case are not binding in subsequent cases. (*Board of Trustees*, 141 Ill. App. 3d at 456, 490 N.E.2d at 237.) The language above quoted was not necessary to decide the case, which involved only the issue of the validity of the ordinance and not whether garnishment of city funds is otherwise legal. Therefore, to the extent *McLorn* may indicate that the view of this court is that a judgment creditor may, consistent with the public policy and law of this State, execute on, or garnish, city property to satisfy the judgment debt, we wish to clarify it.

The view expressed herein on the issue of whether a judgment creditor may execute on, or garnish, city property to satisfy the judgment debt is consistent with the dissent of Justice Karns in *McLorn*.

In that dissent, Justice Karns points out that it has long been the law in Illinois that execution cannot be levied against a municipal corporation on a judgment recovered against it and that this judicially created exemption is justified not on consideration of sovereign immunity but on considerations of public policy, as expressed in *Hasley*. Justice Karns further states that the exemption of municipal corporations from execution or garnishment to satisfy judgment debts is the general rule prevailing in the United States. Justice Karns expresses that municipal corporations may not, however, refuse to satisfy judgments entered against them. Judgment creditors may compel by *mandamus* the satisfaction of judgments by payment or the levy of a tax sufficient to raise a fund to satisfy outstanding judgments against the municipality. (*McLorn*, 105 Ill. App. 3d at 156, 434 N.E.2d at 50.) Justice Karns would have reversed the judgment of the circuit court not because the ordinance was valid and established sovereign immunity for the city but because, regardless of sovereign immunity, a judgment creditor may not execute on, or garnish, city property to satisfy the judgment debt.

We have found no case in which it has been held that a judgment creditor may execute on city property to satisfy the judgment debt. In *Henderson v. Foster* (1974), 59 Ill. 2d 343, 319 N.E.2d 789, our supreme court held that a judgment obtained against a city employee may be satisfied by a garnishment of wages owed to that employee by the city. This decision changed preexisting law, which had held, on the basis of public policy, that a city could not be subject to a wage garnishment because it should not be turned into an instrument or agency for the collection of private debts because the efficiency of government would thus be impaired and inconvenienced (59 Ill. 2d at 348, 319 N.E.2d at 792). In allowing wage garnishments, the *Henderson* court pointed out that public funds are not put in jeopardy, as the funds actually belong to the employee. "We note that the employer under the Wage Deduction Act will not lose any of its money but will be required to deliver over only that which it owes its employee." 59 Ill. 2d at 350, 319 N.E.2d at 793.

Although the *Henderson* court overruled prior decisions which prohibited wage garnishments against cities, we do not think the *Henderson* court meant to overrule those decisions which prohibit nonwage garnishments or executions against city property. As Justice Karns pointed out in his dissent in *McLorn*, the considerations are completely different. The funds allowed to be garnished by *Henderson* were not operating revenues of the city but merely funds owed to city employees. In *Henderson*, the city was not the debtor, and it was not

city property which was sought to be seized. Instead, a city employee was the debtor, and it was that employee's property which was sought to be seized. Thus, the decision in *Henderson* did not affect the long-standing public policy, as expressed in *Hasley*, that city funds or property may not be garnished or executed upon in order to satisfy a judgment debt owed by the city. That this is so is also evidenced by decisions, rendered subsequent to the decision in *Henderson*, which reaffirm the holding of *Hasley*. *Evans*, 689 F.2d at 1296; *In re Application of County Collector*, 79 Ill. App. 3d at 153, 398 N.E.2d at 394.

Finally, we think that the public policy announced in *Hasley* remains sound today. One can envision the disruption to city services and resultant inconvenience, if not danger, to city residents if a judgment creditor is allowed to seize property that the city needs to carry out its duties. The dangers of allowing judgment creditors to seize city property is aptly expressed in *Hasley*:

> "[l]evying on and selling such property, and removing it, would work the most serious injury in any city. Many of our cities, Chicago especially, have costly water works, indispensable to the lives and health of the citizens. These works are as much the property of the city as any other it may control, and, in appellee's view, liable to be seized and sold on execution, to the great discomfort and probable ruin of the inhabitants. Fire engines are also indispensable; they too can be seized and sold, and a great city exposed to the ravages of fire, and all this to enable one or more creditors of the city to obtain the fruits of judgment against the city, which, by another process, not producing any of these destructive inconveniences, they could fully obtain. The money raised by taxation could also be levied upon, and the whole business of the city be broken up and deranged. Its offices and office furniture, its jails, hospitals and other public buildings, taken from the corporate authorities, and sold to strangers, who would have a right to the exclusive possession of them, if not redeemed. In the absence of an express statute authorizing a proceeding, fraught with such consequences, we must hold, that a [*fieri facias*] cannot issue against the city of Chicago." (*Hasley*, 25 Ill. at 596.)

The same remains true today, for, were we to hold otherwise, fire engines, police cars, water works, sewer systems and other property essential to the operation of the city and the safety and health of its residents could be seized, placing city residents in danger.

A rule is valid, however, only insofar as its underlying rationale is applicable. In circumstances where the rationale supporting the rule is

inapplicable, so too is the rule. The rationale set forth in *Hasley* and the cases which followed it which support the prohibition of execution upon municipal property is that a municipal corporation, unlike private corporations, is both a public and political body, clothed with exclusive civil authority and political power and possessing the responsibility to provide security for the lives and property of a great number of persons. To carry out these responsibilities, a municipal corporation must possess physical assets such as buildings, waterworks, fire engines, police cars, etc. Such property is held for public, and only public, purposes, and to allow such assets to be executed upon would impair the municipality's ability to carry out its duties. The purpose of the rule is to protect municipal property which the municipal corporation needs to perform the functions for which it was created; the rationale for the rule being that certain physical assets are necessary to enable the municipality to perform these functions. Where a particular item of municipal property is not needed to perform any particular municipal function, execution thereon would not impair the municipality's ability to carry out its duties and there is no reason that execution should be precluded. See *City of Hazard v. Duff* (1941), 287 Ky. 427, 154 S.W.2d 28; *Maryland Casualty Co. v. Leland* (1938), 214 N.C. 235, 199 S.E. 7; *Board of Councilmen v. White* (1928), 224 Ky. 570, 6 S.W.2d 699; see also 30 Am. Jur. 2d *Executions* §§195 through 198 (1967); 17 E. McQuillin Municipal Corporations, §§49.41, 49.43 (3d ed. 1982.)

 ▮▮ In the present case, the City Hall clearly serves a cognizable municipal function, and public policy precluded execution against such property. Because execution thereon was precluded, the City's failure to perfect a stay pursuant to Supreme Court Rule 305(i) is of no consequence with respect to that portion of the trial court's order relating to City Hall. The record is devoid, however, of any evidence that the 220-acre tract of vacant ground, a former industrial site, serves any cognizable municipal function, nor is there any evidence that execution upon this property would result in any disruption of municipal services. Consequently, there is no sound reason why public policy considerations should preclude execution thereon. Because public policy did not preclude execution thereupon, Rule 305(i) is applicable, and the City's failure to perfect a stay of the trial court's order leaves this court unable to provide any relief. Therefore, that portion of this appeal relating to the 220-acre tract must be dismissed.

We do not in any way mean to imply that the City of East St. Louis, or any city, has any lesser obligation to satisfy judgments rendered against it than any other judgment debtor. Instead, the law of

the State of Illinois recognizes that a city has no higher duty than to pay the judgments against it and that a city has no discretion to depart from statutory methods of payment. (*Evans*, 689 F.2d at 1296.) Numerous methods of payment of judgment debts are provided by statute, and cities are obligated to pay their judgment debts in accordance therewith.

Appellant raises two additional issues (that the transfer of city property violates the "public trust doctrine," discussed in *People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 360 N.E.2d 773, and that the trial court abused its discretion in not providing the City with adequate time to respond to appellee's motion for execution of the judgment), which, in light of our holding herein, we find we need not address.

Accordingly, we find the appeal from that portion of the order of September 27, 1990, relating to the 220 acres of vacant ground to be moot, and the Estate's motion to dismiss this appeal is hereby granted with respect to said property. The appeal from that portion of the order relating to City Hall is not moot, and the Estate's motion to dismiss is denied with respect thereto. Furthermore, we vacate the order of the circuit court of St. Clair County, dated September 27, 1990, allowing execution against City Hall. Because the quitclaim deed purporting to convey City Hall to the Estate was executed pursuant to the court's order of September 27, 1990, which is hereby vacated, that deed is rendered null and void. The effect of a vacation of a judgment is to abrogate that judgment and leave the case as it stood prior to entry of the judgment. (*Cf. People ex rel. Krych v. Birnbaum* (1981), 101 Ill. App. 3d 785, 791, 428 N.E.2d 974, 978.) The quitclaim deed to City Hall was predicated upon, and executed by authority of, the court's order of September 27, 1990. Where that order is vacated, it is as if it was never executed. Therefore, the quitclaim deed, executed without authority of a court order, is null and void.

For the foregoing reasons, the order of September 27, 1990, of the circuit court of St. Clair County is vacated in part, and the present appeal is dismissed in part.

Vacated in part; appeal dismissed in part.

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree with Justice Rarick that Supreme Court Rule 305(i) (134 Ill. 2d R. 305(i)) renders this appeal moot as to the 220 acres of vacant ground. Justice Welch argues that the requirements of the rule

have not, in fact, been satisfied "because the transfer to trust GSA33 did not take place after the order became final within the meaning of Rule 305(i)," (228 Ill. App. 3d at 453) but this is not so. A final judgment is one which fixes, determines, and disposes of the parties' rights regarding the litigation or some definite, separate part of the litigation. (*Pottorf v. Clark* (1985), 134 Ill. App. 3d 349, 351, 480 N.E.2d 533, 535.) The circuit court's judgment of September 27, 1990, clearly met this standard.

Contrary to Justice Welch's assertion, the judgment did not have to await the passage of 30 days following its entry until it became final. Under the rules of our supreme court, written judgments, of which this is one, become final not later than the date on which they are signed and filed with the clerk. (134 Ill. 2d R. 272.) In no instance of which I am aware do the rules condition a judgment's finality on the expiration of an additional 30-day period.

To accept Justice Welch's view would thus require us to hold that the term "final judgment" has a different meaning under Rule 305(i) (134 Ill. 2d R. 305(i)) than it does elsewhere in the court's rules. As Justice Welch himself acknowledges, however, rules of court are to be construed as are statutes. It is a well-established principle of statutory construction that where the same words appear more than once in a statute, they should be given a consistent meaning unless legislative intent to the contrary is clearly expressed. (*Mirabella v. Retirement Board* (1990), 198 Ill. App. 3d 971, 974, 556 N.E.2d 686, 688.) Our supreme court has manifested no intent that a "final judgment" should be assigned any different meaning under Supreme Court Rule 305(i) (134 Ill. 2d R. 305(i)) than it has under the other rules of court. If the supreme court wanted to make Rule 305(i) (134 Ill. 2d R. 305(i)) a special case, it could easily have so provided. But it did not, and this court has no authority to revise or refine that court's duly adopted rules. (See 134 Ill. 2d R. 3.) Yet, that is precisely what Justice Welch would have us do.

Justice Welch, of course, professes that he is simply construing Rule 305(i) (134 Ill. 2d R. 305(i)) "in a manner that avoids unjust results." (228 Ill. App. 3d at 454.) Even that rationale is untenable, however, for the injustice he perceives is illusory. Justice Welch contends that unless his interpretation is adopted, the party prevailing at trial will always be able to "defeat the right of the opposing party to seek a stay and consequently a meaningful appeal from the judgment, by doing what the Estate did here" (228 Ill. App. 3d at 453), namely, transferring the real property immediately upon entry of the judgment. This is incorrect.

Under the express terms of Rule 305(i) (134 Ill. 2d R. 305(i)), a transfer of real property to a third party after a final judgment will prevent the rights of the third party to that property from being affected by a subsequent reversal or modification of the judgment only "[i]f a stay is not perfected within 30 days of the entry of the judgment appealed from, or within any extension of the time granted under subparagraph (a)(2) of [the] rule." The converse of this principle is that where a stay *is* perfected within the specified time, the rights of the third party to property acquired following the judgment may be affected by the judgment's reversal or modification. Accordingly, even where the real property is transferred to a third party immediately after entry of the final judgment, the case will still not be rendered moot so long as the party who lost at trial ultimately perfects its stay within the time specified by the rule.

The only party who might be prejudiced by this procedure is the third party who acquires the property immediately following the judgment, for his rights to that property may be lost or encumbered if the appellant is ultimately successful. In my view, however, this is not an unduly harsh result, for the third party should certainly know, or be able to discover through reasonable inquiry, that the property he has acquired or seeks to acquire was the subject of a recent judgment. That, in turn, should place him on notice of the possibility that a stay might be obtained and that his rights to the property might one day be encumbered or lost. If he nevertheless decides to proceed with the acquisition, the risk will be his to bear. Presumably, this risk will be reflected in the price he is willing to pay or the terms he is willing to accept for acquisition of the property.

In sum, the City's right to appeal has not been and could not be defeated merely because the Estate opted to transfer the property to the trust immediately after entry of the judgment. To preserve its rights, the City had only to perfect a stay within the period prescribed by Rule 305(i) (134 Ill. 2d R. 305(i)). That simply was not done. It was not done within 30 days of judgment. It was not done ever. While I remain profoundly sympathetic to the continued plight of the residents of East St. Louis, we cannot now rewrite the rules of court to grant them some special exemption. Under Rule 305(i) (134 Ill. 2d R. 305(i)), this appeal is moot and should be dismissed.

I dissent from Justice Rarick's opinion because I would not limit the dismissal to the 220 acres. The appeal as to City Hall should be dismissed as well. Justice Rarick attempts to differentiate these properties based on considerations of public policy, but his public policy arguments are no more persuasive to me now than they were when first

advanced by Justice Karns in his dissenting opinion in *McLorn v. City of East St. Louis* (1982), 105 Ill. App. 3d 148, 434 N.E.2d 44.

To the extent that he would grant East St. Louis protection from having certain of its property subject to execution, Justice Rarick has cloaked the City with at least a limited form of sovereign immunity. (See 105 Ill. App. 3d at 152, 434 N.E.2d at 47.) This is so because, as Justice Rarick himself concedes, "sovereign immunity includes not only the right to sue, but also the right to satisfy a judgment rendered upon suit." (228 Ill. App. 3d at 444.) Under section 4 of article XIII of the 1970 Illinois Constitution (Ill. Const. 1970, art. XIII, §4), however, sovereign immunity has now been abolished "[e]xcept as the General Assembly may provide." This abolition applies not only to the immunity of the State but to the immunity of municipalities as well. (*Henderson v. Foster* (1974), 59 Ill. 2d 343, 349, 319 N.E.2d 789, 793.) Accordingly, the only way the City here could possibly be immunized from execution against any of its property is through legislation enacted by the General Assembly. No such legislative immunity has been granted.

What the legislature has done is enact article IX of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, pars. 9—101 through 9—107). Far from conferring immunity, that statute indicates that it is the public policy of this State for local public entities to pay tort judgments against them. To meet this obligation, the statute gives such entities authorization to pay off judgments in installments over more than one fiscal year (Ill. Rev. Stat. 1989, ch. 85, par. 9—104) and permits them to issue bonds (Ill. Rev. Stat. 1989, ch. 85, par. 9—105) and to levee taxes (Ill. Rev. Stat. 1989, ch. 85, par. 9—107). Unlike Justice Rarick, however, I do not regard this as an exclusive list of the means by which judgments against municipalities can be satisfied. Under article XIII of our constitution (Ill. Const. 1970, art. XIII), all presumptions must now be exercised *against* allowing governmental immunity. Given this, I believe that the only proper way to construe article IX of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, pars. 9—101 through 9—107) is as a means of empowering public entities to meet their judgment obligations in ways that might not otherwise be available to them absent the legislation.

In other words, I view the statute as a grant of additional authority to judgment debtors who are public entities. It is not and does not purport to be a limitation on the rights of judgment creditors to enforce their judgments in the ways otherwise available to them. At no point does it expressly or impliedly prohibit judgment creditors from

attaching municipal property, and it certainly offers no basis for making the distinction drawn by Justice Rarick between property that serves "a cognizable municipal function" and that which does not.

Justice Rarick is rightly concerned about the possible disruption in city services which might result if judgment creditors are permitted to attach municipal property. As we noted in *McLorn*, however, that is a problem which is better addressed to the General Assembly than to this court. (*McLorn*, 105 Ill. App. 3d at 154, 434 N.E.2d at 48.) Where, as here, the constitution and statutes have addressed a matter, we have no authority to act as a "superlegislature" under the guise of public policy, for "[w]hen the [General Assembly] speaks upon a subject, upon which it has the constitutional power to legislate, public policy is what the statute, passed by it, indicates." (*Henderson v. Foster* (1974), 59 Ill. 2d 343, 347-48, 319 N.E.2d 789, 792.) For the foregoing reasons, the entire appeal should be dismissed.

JUSTICE WELCH, dissenting in part and concurring in part:

I disagree with Judge Rarick's conclusion that, with respect to the 220 acres, this appeal is rendered moot by Supreme Court Rule 305(i). (134 Ill. 2d R. 305(i).) It is my opinion that all of the requirements of Rule 305(i) have not been satisfied in this case because the transfer to trust GSA33 did not take place after the order became final within the meaning of Rule 305(i).

I think that a fair and reasonable interpretation of Rule 305(i) requires that the transfer of real estate must be made after the order appealed from becomes final, not in the sense that it is a final and appealable order, but in the sense that the 30-day time period for seeking review of the order, either in the trial court through a posttrial motion or in the appellate court through the filing of a notice of appeal, has run. This view is supported by our decision in *Meeker v. Payne* (1981), 101 Ill. App. 3d 723, 726, 428 N.E.2d 614, 616, in which we held that, where a transfer to a third party was made less than 30 days after entry of the order appealed from, it could not be said that the third party acquired title to the real estate after the judgment became final, and as a consequence, Supreme Court Rule 305(i) did not apply.

Indeed, to hold otherwise would allow the party who prevailed at trial to defeat the right of the opposing party to seek a stay and consequently a meaningful appeal from the judgment, by doing what the Estate did here, that is, transferring the real property immediately upon entry of the order and before the losing party has the opportunity to obtain an appeal bond and seek a stay of the order. If Rule

305(i) applies to such a case, then the losing party is effectively deprived of its right to meaningful review of the trial court's order, as the appeal is rendered moot. This cannot be the intent of the rule.

Rule 305 allows a party 30 days in which to file an appeal bond and seek a stay pending appeal. (134 Ill. 2d R. 305.) Supreme Court Rule 303 allows a party 30 days in which to file a notice of appeal. (134 Ill. 2d R. 303.) Furthermore, parties who lose at trial are granted 30 days in which to file post-trial motions seeking review in the trial court. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—1202, 2—1203.) If Rule 305(i) applies to transfers made within this 30-day period, a party can effectively defeat each of these rights, for any further review is rendered moot by the transfer. Supreme court rules, which are to be construed as are statutes (134 Ill. 2d R. 2), should be construed in a manner that avoids unjust results. (*Croissant v. Joliet Park District* (1990), 141 Ill. 2d 449, 455, 566 N.E.2d 248, 251.) To allow Rule 305(i) to apply to a case such as the one at bar would result in injustice.

Accordingly, I would find that the transfer by the Estate to trust GSA33 was not made after the order of September 27, 1990, became final. Therefore, Rule 305(i) would not apply in the instant case.

However, I wholeheartedly and completely agree with the reasoning and conclusion of Judge Rarick that the public policy of the State of Illinois, as expressed in *City of Chicago v. Hasley* (1861), 25 Ill. 595, and its progeny, prohibits a judgment creditor from executing upon essential city property in order to satisfy the judgment debt. I would go further than Judge Rarick, however, and find that the rule against execution upon city-owned property extends to all such property and not merely to property deemed necessary or essential to the functioning of the city.

It is my opinion that courts are not qualified to make decisions in cases such as this as to what property is necessary or essential to the functioning of a city. A city must make long-term planning decisions with respect to the property it owns, decisions which require foresight, an understanding of the workings of the city, the interrelationship of its many functions, and some level of expertise. City-owned property which does not appear to be essential or necessary today to the functioning of the city may be included as an integral or essential element in a future plan. To allow execution on such city-owned property may disrupt and interfere with a city's long-term planning decisions, thus disrupting the functioning of the city in an indirect but long-term way.

Courts should not be placed in the position of analyzing and determining what city-owned property is necessary or essential to the func-

tioning of the city, either because it is used today or because it is included in an essential long-term plan for the city. I would therefore extend the prohibition against execution on city-owned property to include all such property, rather than placing on the courts the onerous task of determining whether such property is necessary or essential to the immediate or long-term functioning of the city.

Finally, I note that *Hasley* makes no distinction between necessary and unnecessary city-owned property but holds that all city-owned property is exempt from execution by a judgment creditor. As *Hasley* expresses:

> "[t]his power of taxation is plenary, and furnishes, ordinarily, the only means such corporations possess, by which to pay their debts. They cannot be said to possess property liable to execution, in the sense an individual owns property to subject, for they have the control of the corporate property only for corporate purposes, and to be used and disposed of to promote such purposes, and such only." (25 Ill. at 596.)

Nor do any of the cases following *Hasley* recognize any distinction between necessary and unnecessary city-owned property.

In *In re Application of County Collector* (1979), 79 Ill. App. 3d 151, 398 N.E.2d 392, the property at issue was held by the Metropolitan Sanitary District of Greater Chicago, a municipal corporation, as a *potential* site for a surface retention reservoir. The court found that property belonging to a municipality cannot be executed upon, making no distinction between property which is presently necessary to the functioning of the city and property which may become necessary in the future because it is included in the city's long-term plans.

Thus, I would not require the courts to determine in every case what city-owned property is considered necessary to the functioning of the city and may not be executed upon and what city-owned property is not considered necessary and may be executed upon. I would hold that no city-owned property may be executed upon to satisfy a judgment debt.